Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
Tim L. Johnson CA Bar No. 265794
tim.johnson@ogletree.com
Andrew J. Deddeh CA Bar No. 272638
andrew.deddeh@ogletree.com
Brett R. Tengberg, CA Bar No. 318436
brett.tengberg@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4660 La Jolla Village Drive, Suite 900
San Diego, CA 92122
Telephone: 858-652-3100
Facsimile: 858-652-3101

Attorneys for Defendant GUARANTEED RATE, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PETERS, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GUARANTEED RATE, INC,<br><br>Defendant. | Case No. 3:23-cv-05602-VC<br><br>**AMENDED EXHIBIT 8 TO DECLARATION OF KRISTEN GERACE IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION, ECF 39-3**<br><br>Hearing Date: April 4, 2024<br>Hearing Time: 10:00a.m.<br>Courtroom: 4<br><br>Complaint Filed: October 31, 2023<br>Trial Date: None Set<br><br>District Judge: Vince Chhabria |

EXHIBIT 8

DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551

# Compensation Terms

Vice President of Mortgage Lending

Exclusively prepared for Robert Peters

guaranteedRate | The Platform to Double Your Purchase Business



DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551

# Guaranteed Rate Core Values

Here at Guaranteed Rate we strive for the industry leading value proposition for our loan officers, our referral sources and our customers.

### Put the customer first

At Guaranteed Rate a satisfied customer is one who would refer us to friends and family. We strive to win the trust and the business of our customer to make them clients for life.

### Work with the best of the best

We built our company by focusing on the best of the best. High performing individuals and organizations have a multiplying effect on results and so we are selective about whom we work with. We work hard to support and improve the relationships we have with our employees and referral partners.

### Demand excellence

We have a high standard for the quality of our work. When we do our jobs well, our referral partners are happy and our customers keep coming back. We pride ourselves on excellent work and it shows in our year over year growth.

### Hold self and others accountable

We hold ourselves and others accountable for high quality work meeting commitments made. We admit our mistakes, seek transparency and embrace constructive feedback, which allows us to learn from our mistakes and improve in the future.

### Ownership

We work as though we own the company and we focus on the whole. We have a commitment to sustainability and growth.

### Frugality

We spend on what matters to our customers and we limit the rest. Low rates can only be accomplished through being financially disciplined. Frugality is a constraint that forces us to be inventive and have a culture of self-sufficiency.

### Bias to action

Quick delivery is important for our customers and our bottom line. We move fast in order to limit risk. We make tough decisions and strive to create an environment that fosters a strong bias to action.

### Healthy, balanced and fun

Delivering results is best achieved by energetic and healthy individuals who love their jobs, have good relationships with co-workers and live balanced lives. We also believe that part of being a healthy and balanced individual is giving back and making a difference outside the company through charity.

### Think big and solve problems

We are bold in our ideas and we challenge the status quo. When confronted with a problem we turn lemons into lemonade, finding solutions with a proactive mentality.

### Deliver results

We overcome obstacles, solve problems and produce results for the business. We don't spend time thinking about the past, rather, we own them and find ways to deliver better outcomes in the future.

---

The following document contains specific details related to your compensation structure. Please reach out to me with any questions.

Yong Choi
951-356-2061
yong.choi@rate.com

DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551



# ROBERT PETERS
# COMPENSATION, CORPORATE OBJECTIVE AND LOAN PRICING SCHEDULE

This Compensation, Corporate Objective and Loan Pricing Schedule ("Schedule") to the Sales Compensation Plan and Agreement (the "Agreement") is dated as of **December 27, 2016** (the "Effective Date").

The purpose of this Schedule is to identify and confirm your Corporate Objective, loan pricing, Commissions and other compensation on and after the Effective Date.

All capitalized terms that are not defined in this Schedule shall have the meaning set forth in the Agreement.

Compensation under this Agreement shall at all times comply with applicable law, including the Loan Originator Compensation Rule, 12 CFR § 1026.36(d)-(e). Nothing in this Agreement shall be construed to conflict with applicable law.

You and the Company agree as follows:

## 1. YOUR PRODUCTION GOALS

| Time Periods | Dollar Volumes of Funded Eligible Loans | Number of Funded Eligible Loans |
|---|---|---|
| The First 180 Days of Your Employment With The Company | $10,000,000 | 45 Eligible Loans |
| Each Year | $20,000,000 | 90 Eligible Loans |

## 2. YOUR DRAW

You will not receive a Draw.

## 3. YOUR CORPORATE OBJECTIVE AND LOAN PRICING

| Corporate Objective | Minimum Lock Price For Eligible Loans |
|---|---|
| PAR | 101.5 at PAR |

Executive Management must approve any change to your Corporate Objective. In no event may your Corporate Objective be changed more than once every 90 days.

Please see Section II(a) through (c) of the Agreement for more information about your Corporate Objective and Section II(d) for more information about loan pricing.

## 4. YOUR COMMISSIONS

   **(a) Amount of Your Base Commission**

Your Base Commission for each Eligible Loan that you originate and that the Company funds during a calendar month are described in the Table below.

DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551
DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551

| Base Commission and Commission Floor | Amount of Your Base Commission |
|---|---|
| Base Commission | 150 Basis Points × the principal balance of each Eligible Loan |
| Base Commission "Floor" | Your Base Commission will never be less than $937.50[1] |

[1]. The Base Commission Floor will apply to all Eligible Loans with principal balance less than **$62,500**.

| (b) Amount of Your Scorecard Bonus Commission | **Annual Value of $20,000** |
|---|---|
| | (Based on projected volume of $20 million x 10 bps) |

The potential amount of your Scorecard Bonus Commission is described in a separate "Retail Sales Performance Scorecard," which will be provided to you as a separate document.

You can earn **up to 10 additional basis points** on each Eligible Loan originated by you and funded by the Company by working efficiently. These basis point fall within a range that may change from time to time. The scorecard bonus is based on closing ratios, efficient application submissions, fee collections, minimizing rush requests, minimizing errors and submitting clean/high quality files to underwriting. The scorecard bonus also rewards submitting clean files that can be processed and closed quickly.

*Please see Section II(c) of the Agreement for more information about your Commissions.*

### 5. MARKETING PLATFORM – ALL INCLUSIVE PLAN
**Annual Value of $15,000**

You have elected to receive the All-Inclusive Plan. This Plan provides you with a suite of tools, resources and materials to support your business.

| Plan Highlights (Standard) | ANNUAL VALUE ADD: $15,000 |
|---|---|
| Monthly Postcard Mailers (500 per month x 11 months x $0.65) | ($3,575) |
| Regional Marketing Manager | ($2,500) |
| Event Planners | ($2,500) |
| Social Media Team | ($2,500) |
| Email Blast Mailing ($83/month x 12) | ($1,000) |
| Value Added Marketing Services for Realtors | ($1,000) |
| Marketing Kit/Custom Realtor Partner Material | ($1,000) |
| Moving Announcement Postcards (500 names) | ($375) |
| Personal GRI Website | ($300) |
| Guaranteed Rate Report Weekly eNewsletter | ($65) |
| VP Brochure | ($65) |
| Personalized Weekly Market Update | ($65) |
| Realtor Partner Program Binder Presentation | ($30) |
| Bio Sheet | ($25) |

### 6. BUSINESS DEVELOPMENT ALLOWANCE
**Annual Value of $2,640**

This benefit will allow you to grow your business, expand your realtor relationships, plan events and much more.

- Based on your expected annual volume numbers, you will be given a quarterly business development allowance of $300. ($300 x 4 quarters = $1,200)

- You are also eligible to receive $120 per month that can be put toward Broker Open events. ($120 x 12 months = $1,440)

### 7. PROCESSING SUPPORT
**Annual Value of $18,000**

**Mortgage Consultant/Loan Coordinators:** Guaranteed Rate will cover your cost of an MC and LC.

- Based on your expected number of annual Eligible Loans this is an additional value of **$2,000 per year** ($200/Eligible Loan x 90 Loans)
- The Mortgage Consultant transitions the loan from the point of sale by the VP to the processing of the application through underwriting. Additionally, the MC has good product knowledge and serves as a resource to back-up and complement the VP.

### 8. BENEFITS

In addition to your Commissions, Bonuses, and All Inclusive Plan, the Company makes the following additional benefits available to you.

- From time to time, the Company offers its employees certain group health, life, accident and disability insurance or payment plans and similar benefits. Depending on the size of your family and the benefits you select, the Company may contribute **up to $6,000 per year** to your benefits.
- You will be eligible to participate in the Company's comprehensive 401(k) program that includes a **Company match of up to $2,000** per year.

### 9. EXAMPLE

The following example is based on the assumption that you will originate 5 funded Eligible Loans during your first 180 days of employment with the Company, and 10 funded Eligible Loans during your first year of employment with the Company.

**Your Estimated Total Compensation For Your First Year of Employment With The Company**

| | |
|---|---:|
| Scorecard Bonus Commission (estimated) | $20,000 |
| Marketing Platform | $15,000 |
| Business Development | $2,640 |
| Processing Support (estimated) | $18,000 |
| Health Insurance & Other Benefits (estimated) | $8,000 |
| **"Enhanced Value"** | **$63,640** |
| Base Commissions | $300,000 |
| **Total Compensation** | **$363,640** |

**I agree that this Schedule accurately reflects my understanding of the terms of my Draw, Corporate Objective, loan pricing, Commission, and Bonus. I also agree that I must originate each loan at or above my Corporate Objective (taking into account all of the factors and deductions described in the Agreement) to be eligible to earn a Commission.**

| Robert Peters | Guaranteed Rate, Inc. |
|---|---|
| (Print your name here) | |
| *Robert Peters* (DocuSigned) | *signature* (DocuSigned) |
| (Place your signature here) | By: Nikolaos Athanasiou, Chief Operating Officer |
| 12/9/2016 | 1/5/2017 |
| (Date) | (Date) |

DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551



# RETAIL SALES COMPENSATION PLAN AND AGREEMENT – OUTSIDE SALES EMPLOYEE – ALL INCLUSIVE

## ROBERT PETERS– VICE PRESIDENT OF MORTGAGE LENDING — BEAUMONT, CA (1326)

All capitalized terms used in this Retail Sales Compensation Plan and Agreement (this "Agreement") have the meanings as defined in Exhibit A attached hereto and incorporated herein by reference in the Agreement.

### I. SCOPE OF EMPLOYMENT

You and the Company agree as follows:

**(a) Your Employment Obligations**

As an employee of the Company, you must comply with all of the following requirements.

   a. You must perform all of your employment obligations in a manner that is ethical, fair and compliant with all Requirements.

   b. You must price all loans at or above your Corporate Objective, as defined below, and comply with all Requirements when quoting and locking loan prices.

   c. You must collect all loan fees and manage all loan application, processing and related services in a manner consistent with applicable Requirements throughout the loan transaction, from loan application through funding.

   d. You must ensure that each applicant's loan terms and conditions are consistent with the applicable loan program, investor Requirements and all other applicable Requirements.

   e. You must ensure and confirm that each loan and related documents and information are processed and conducted only through the Company's approved loan origination system, approved automated underwriting systems, and the Company's payroll and accounting systems, as applicable.

   f. You must devote your full time and efforts to your employment with the Company. During your employment with the Company, you may not be employed by any other Person. You also may not provide any services or assistance to any other Person in connection with any lending, financial, insurance, title or real estate-related activities.

   g. You may offer only the loan products and programs approved by and made available through an origination channel of the Company.

   h. You must obtain and renew any and all applicable licenses, registrations and/or approvals required by a State governmental authority for each State in which you originate and/or intend to originate loans. The Company will terminate your employment if you (a) do not obtain any required license or other approval within 45 days after your date of employment, or (b) perform any services requiring a license or approval prior to obtaining such license or approval.

   i. You must conduct all of your other employment services in compliance with all other Requirements.

**(b) Outside Sales Employee.**

As an Outside Sales Employee, you must visit with clients and prospective clients, referral partners and potential referral partners in person to discuss the services that we offer, explain loan options, procedures, costs/benefits, etc. These meetings will normally and customarily occur outside of the office. The Company is committed to helping its employee be successful with this platform—if you believe you are not able to, or do not, comply with the duties set forth herein it is your obligation to notify the Company of any such deviation.

DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551

## II. CORPORATE OBJECTIVE AND LOAN PRICING

**(a) How We Calculate The Corporate Objective**

The amount of your Corporate Objective is set forth in the Schedule.

Your "Corporate Objective" is the amount of the Net Loan Revenue that you agree the Company will receive from the sale of each Eligible Loan that you originate, after subtracting all Deductible Expenses and any Borrower Expenses credited back to a borrower.

An "Eligible Loan" means each first-lien closed-end mortgage loan that (a) is originated by you, (b) is closed and funded by the Company, (c) is sold to an investor in a manner that complies with all Requirements in this Agreement, (d) is not the subject of a Recapture Event, and (e) otherwise complies with all applicable Requirements.

"Deductible Expenses" include all costs, third party fees, rate lock extension fees, expenses that would not otherwise have been incurred by the Company but for an error committed by an employee of the Company, and all other costs and expenses associated with the origination of the Eligible Loan, *other than* the amount of your Commission and any Borrower Expenses credited back to the Borrower by the Company.

"Borrower Expenses" include all loan-related fees and costs that are payable by a borrower and permitted under applicable Requirements, including appraisal fees, rate lock extension fees and certain other fees.

You may choose the amount of your Corporate Objective, subject to certain limits and conditions.

You understand and acknowledge that the deduction of the amounts above do not constitute deductions from your Commission. In the event that the deductions above are determined to be deductions from your Commission, you authorize the Company to deduct these costs, which are incurred directly for your benefit.

**(b) Corporate Objective Surplus**

Net Loan Revenue received by the Company in excess of your Corporate Objective is referred to in this Agreement as a "Corporate Objective Surplus."

You may use a Corporate Objective Surplus to pay for Borrower Expenses. If a Corporate Objective Surplus is not sufficient to pay all Borrower Expenses, the borrower must pay the remaining Borrower Expense directly.

Any Corporate Objective Surplus remaining after paying all Deductible Expenses and any Borrower Expenses may be credited back to the borrower at closing.

You may *not* receive any Corporate Objective Surplus at any time, whether in the form of a Commission or otherwise. For example, you may *not* offset a Corporate Objective Shortfall with some or all of a Corporate Objective Surplus.

**(c) Corporate Objective Shortfall**

In this Agreement, a "Corporate Objective Shortfall" means the amount of Net Loan Revenue received by the Company that falls short of your Corporate Objective with respect to a loan originated by you. You may *not* price a loan that will result in a Corporate Objective Shortfall unless approved in writing by an officer or employee designated by Executive Management of the Company. You understand and acknowledge that any such approval will be granted only under limited circumstances that comply with applicable Requirements.

If you price a loan that would result in a Corporate Objective Shortfall without written approval from a designated officer or employee of the Company, the Company may, in its sole discretion, refuse to close or fund that loan.

**(d) Loan Pricing**

The amount at which you must price each loan is set forth in the Schedule.

You must price each loan at an amount necessary to meet or exceed your Corporate Objective. For example, assume that your Corporate Objective is 150 basis points. When you originate a loan, you must review the investor's current rate sheet and lock-in an interest rate for the loan that will result in 150 basis points or more of Net Loan Revenue for the Company, after subtracting all Deductible Expenses and any Borrower Expenses credited back to the borrower.

### III.  COMPENSATION

**(a) Your Draw**.

**(1) In General**

Please refer to the Schedule to determine whether you have a Draw.

**(2) The Amount of Your Draw**

If you have a Draw, the amount of that Draw is set forth in the Schedule.

If you have a Draw, it will be paid during each full month you are employed by the Company. The Company will pay you the Draw in two equal installments on the fifteenth day and last day of each month. We will deduct from your Draw any federal, state and local payroll taxes and any health, disability, life or other benefits that you elect to receive. We will also deduct the amount of your Draw from your Commission and any other compensation described below and in the Schedule.

**(b) Fully Recoverable Draw and Recoverable Draw Subject to Minimum Wage**

Please refer to the Schedule to determine whether you have a Fully Recoverable Draw or a Recoverable Draw Subject to Minimum Wage.

**(1) Fully Recoverable Draw.**

If your Draw is a Fully Recoverable Draw and is greater than the amount of your Commission during any calendar month, you must repay the difference back to the Company. During your employment with the Company, any Fully Recoverable Draw Amount will be deducted from any future Commission and any other compensation earned by you. By entering into this Agreement, you authorize the Company to deduct any Fully Recoverable Draw Amounts and any other amounts that you owe to the Company from all future Commission and any other compensation until all Fully Recoverable Draw Amounts and other such amounts have been repaid in full. If there is a Fully Recoverable Draw Amount at the time your employment with the Company is ended, you must repay that amount to the Company no later than 10 days after your last day of employment.

**(2) Recoverable Draw Subject to Minimum Wage**

If your Draw is a Recoverable Draw Subject to Minimum Wage and is greater than the amount of your Commission during any calendar month, you must repay the difference back to the Company. During your employment with the Company, any Recoverable Draw Amount Subject to Minimum Wage will be deducted from any future Commission and any other compensation earned by you, but never in an amount that would result in your being paid an amount less than minimum wage during the applicable pay period. By entering into this Agreement, you authorize the Company to deduct any Recoverable Draw Amount Subject to Minimum Wage and any other amounts that you owe to the Company from all future Commission and any other compensation until all Recoverable Draw Amounts and other such amounts have been repaid in full. If there is a Recoverable Draw Amount at the time your employment with the Company is ended, you must repay that amount to the Company no later than 10 days after your last day of employment, but never in an amount that would result in your being paid an amount less than minimum wage during any applicable pay period.

**(c) Your Commissions**

    **(1) How We Calculate Your Commissions**

Your Base Commission is based on a fixed percentage of the principal amount of each Eligible Loan that you originate, and is calculated in the specific manner described in the Schedule.

Please refer to the Schedule for a description of other Commissions that we will pay to you.

    **(2) Commission for Loans that you assist the Company to Close**

You will receive one hundred dollars ($100) per loan for any loan that you assist the Company to close because the initial loan originator has left the employment of the Company. Any loan that you assist in this manner will not be considered an Eligible Loan and will not be included in your Eligible Loan Volume as an eligibility requirement for President's Club, Production Bonuses or any other incentive in which Eligible Loan Volume is used as a measure.

    **(3) Timing of Your Commission; Advances**

Your Commission for each Eligible Loan will be calculated and advanced each month during the payroll period following the funding of the Eligible Loan in accordance with the Company's payroll practices. Your commission on each Eligible Loan that you originate and the Company funds is an advance and not earned until the Company has determined that a Recapture Event has not occurred in connection with the Eligible Loan. The Recapture Event period expires 180 days after the sale of the Eligible Loan by the Company on the secondary market, at which point your commission will be deemed earned ("Earned Commissions").

    **(4) Recapture Event**

A loan has a "Recapture Event" if (i) the Company determines that your Commission or other compensation is greater than the correct amount owed under this Agreement, or there are any Fully Recoverable Draw Amounts, Recoverable Draw Amounts subject to Minimum Wage, or other negative balances or other amounts that you owe the Company under this Agreement, (ii) there has been an Early Payment Default, (iii) there has been an Early Payoff, (iv) the Company is unable to recover all or any part of an unforeseen increase in a settlement cost over the estimated settlement cost disclosed by the Company to the borrower, or (v) the Company is unable to recover all or any part of an unforeseen settlement cost that was not disclosed by the Company to a borrower. A settlement cost or an increase in a settlement cost is "unforeseen" if it occurs even though the disclosure provided to a borrower was consistent with the best information reasonably available to the Company at the time the settlement cost was disclosed to the Borrower.

If a Recapture Event occurs for a loan before the Company has paid you the related Commission, the Company will not pay you part or all of the Commission, as the case may be.

If the Company has paid you a Commission for a loan you originated prior to the occurrence of a Recapture Event, you must repay all or part of the Commission, as the case may be, to the Company immediately. If you do not repay these amounts, the Company will deduct these amounts from your future Commission or other future compensation. If you owe any of these amounts to the Company after your employment with the Company ends, you must pay all such amounts within ten calendar days after the last day of your employment.

    **(5) Monthly Commission Statement Must Be Accurate**

You must ensure that each of your monthly Commission statements are accurate by reviewing all of these Commission statements online approximately one week prior to each payroll date. You must submit any questions or concerns to the Commissions Department before the applicable pay date. The Company will deny any change submitted more than 15 days after any of your Commission statements is issued

DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551

## IV. ENDING YOUR EMPLOYMENT WITH THE COMPANY

### (a) You Are An Employee "At Will"

Your employment with the Company is "at-will." This means that either you or the Company may terminate your employment at any time, for any reason, or for no reason. See Section IV(c) below for information about the Company's payment of any Commission after your employment with the Company has ended.

### (b) Termination For Cause

The Company may terminate your employment for Cause if: (i) you are convicted of, or indicted for, criminal negligence or criminal acts in the work place, or you are convicted of a felony, (ii) you violate Company policies, procedures or directives, (iii) you fail to comply with the terms of this Agreement, (iv) you fail to perform duties reasonably requested by the Company, and (v) you are grossly negligent or exhibit willful misconduct in the performance of your employment duties, and (vi) you take an action or fail to take an action in connection with your employment that is inconsistent with standard practice in the residential mortgage industry.

### (c) Commissions Paid After Your Employment Ends

After your employment with the Company ends for any reason other than for "Cause," you will receive all earned Commissions for each Eligible Loan that was originated by you and was funded within 30 calendar days after your last day of employment, unless otherwise provided in this Agreement. You will not be paid any Commission for any loan that funds more than 30 calendar days after your last day of employment.

If the Company terminates your employment for "Cause," the Company will pay to you your then-current accrued and unpaid Commissions. The Company will not pay to you any other Commission that is not accrued.

The Company may, in its sole discretion, delay the advance of your unearned Commissions for any loan up to 120 calendar days from your last day of employment with the Company.

## V. YOUR CONFIDENTIALITY OBLIGATIONS; NON-SOLICITATION

You must notify any prospective employer or other Person for whom you plan to provide loan-related services about your obligations in this Section V, and that such Person may obtain a copy of these obligations from the Company's Human Resources or Legal Department.

### (a) Confidential Information

During your employment with the Company, you may discover, develop, and/or be entrusted with (a) confidential and proprietary information and trade secrets that are or will be owned by the Company and are not available to the general public or the Company's competitors, including information about the Company's sales, operations, financial condition, financial projections, profit margins, personnel matters, the identity of the Company's top-performing employees, hiring criteria, and training techniques, business goals, strategic plans, promotional strategies, pricing and cost structure, client or potential client identities, client relationship histories, client records, client service matters, client preferences, identity of vendors and suppliers, special vendor and supplier relationships, pricing and delivery terms, computer programs and codes, and other confidential aspects of the Company and its business and operations); (b) information for which the Company is subject to confidentiality requirements due to contractual and/or regulatory obligations; and (c) other matters, documents, materials and information belonging or relating to the Company (collectively "Confidential Information"). The Company has developed and will develop a wealth of intimate knowledge regarding its Confidential Information and, for these and other reasons, the Company has a legitimate and protectable interest in the identity of its

Confidential Information, including the identity of its clients and the method of operations utilized by the Company.

**(b) Use of Company's Confidential Information**

As consideration for your employment, you will not use any Confidential Information for your own benefit, or divulge to or use the Confidential Information for the benefit of any competitor, customer, or any other Person or entity. You may not seek or accept any Confidential Information from any Person, unless you are expressly authorized by the Company to do so in connection with your employment duties and obligations under this Agreement.

Confidential Information includes the identities of clients and borrowers for whom you originated loans while an employee of the Company. However, you may contact and/or solicit these persons during or after your employment with the Company, provided that no such Person (i) has submitted a loan application to the Company at that time, or would have submitted a loan application to the Company but for you actions or omissions, (ii) has a loan in process with the Company at that time, or would have had a loan in process with the Company but for your act or omissions,(iii) has closed a loan with the Company and the Early Prepayment Period set forth in the loan purchase and sale agreement entered into by and between the Company and the investor has not expired.

**(c) Representations and Warranties/Indemnification**

You represent and warrant to the Company that neither you nor anyone acting on your behalf has: (1) taken, accepted, copied, or misappropriated any confidential, proprietary, or trade secret documents, data, or information acquired from any former employer or otherwise; (2) transmitted, communicated or divulged any confidential, proprietary or trade secret information from any former employer or otherwise to the Company or its employees; (3) used any former employer's confidential, proprietary or trade secret information in connection with your employment with the Company, including but not limited to any loan origination activity; and (4) violated any post-employment restrictive covenants or obligations you owe any former employer. You further represent and warrant that you will not engage in any of the foregoing conduct during the course of your employment with the Company.

You shall indemnify the Company from and hold the Company harmless against any and all losses, damages, penalties, fines, liabilities, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Company may sustain arising out of, or in any way related to any claim, demand, defense or assertion based on or grounded upon, or resulting from a breach or alleged breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Subsection. In addition to any and all other obligations of you hereunder, you agree that you will pay the reasonable attorney's fees of the Company incurred in enforcing the obligations hereunder. The indemnification obligations hereunder shall survive the termination of this Agreement and your employment with the Company.

**(d) Use of Information Belonging To Your Former Employer Or Another Person**

As a condition of your employment, you represent and warrant to the Company that you have not misappropriated any information that your former employer, or any other party, may consider to be confidential or a trade secret for use in the performance of your duties as set forth in this Agreement.

**(e) Non-Solicitation**

In this Agreement, "Restricted Period" means the period beginning with the first day of your employment with the Company and ending 24 months after the last day of your employment.

    **(i) Employees**

During the Restricted Period, you may not, directly or indirectly, hire, solicit, or encourage any Person

employed by the Company during your last 12 months of employment with the Company or during the remainder of the Restricted Period to end their employment with the Company and/or join you as a partner, agent, employee, independent contractor or otherwise in a business venture or other business relationship. During the Restricted Period, you may not supervise, manage, or oversee the work of any former employee of the Company, the identity of which you learned during your employment with the Company.

You may ask the Company to provide you with written consent to engage in any of the foregoing activities. The Company may approve or deny any such request in the Company's sole discretion.

**If you fail to comply with any provision of this Section V(d), you must pay to the Company as liquidated damages, and not as a penalty, an amount equal to fifty-thousand dollars ($50,000) for each such instance of non-compliance, and the Restricted Period will be extended an additional 24 months from the date of non-compliance**. Your payment of such liquidated damages will not relieve you of any other obligation or amounts that you owe the Company under this Agreement. You understand and acknowledge that the payment of these liquidated damages is fair and equitable consideration for any failure by you to comply with this Section V(d), and is not a penalty. You must pay all of the Company's reasonable attorneys' fees and all costs and expenses relating to or arising out of any action to enforce, defend or prosecute any provision of this Section V(d).

   **(ii) Vendors**

During the Restricted Period, you will not, for yourself or on behalf of any other Person or entity, directly or indirectly, solicit, offer or provide services to, or seek services from, any past or present vendor or referral partner of the Company, the identity of whom you learned during your employment with the Company. This provision does not apply to any such Person, the identity of whom you learned prior to your employment with the Company.

**(f) Enforcement; Remedies**

You covenant, agree and recognize that because the breach or threatened breach of the covenants, or any of them, contained in Section V hereof will result in immediate and irreparable injury to the Company, the Company shall be entitled to an injunction restraining you from any violation of the covenants and agreements contained in this Section V to the fullest extent allowed by law. Nothing herein shall be construed as prohibiting the Company, and its respective successors and assigns, from pursuing all legal or equitable remedies that may be available to them for any such breach, including the recovery of damages from you.

**(g) Construction**

You hereby expressly acknowledge and agree as follows:

   (i) the covenants set forth in Section V are reasonable in all respects and are necessary to protect the legitimate business and competitive interests of the Company in connection with its business, which you agree, pursuant to this Agreement, to assist in maintaining and developing; and

   (ii) each of the covenants set forth in Section V is separately and independently given, and each such covenant is intended to be enforceable separately and independently of the other such covenants, including without limitation, enforcement by injunction, and that the invalidity or unenforceability of any provision of this Agreement in any respect shall not affect the validity or enforceability of this Agreement in any other respect.

In the event that any provision of this Section V shall be held invalid or unenforceable by a court of competent jurisdiction by reason of the duration thereof of any such covenant, or for any other reason, such invalidity or unenforceability shall attach only to the particular aspect of such provision found invalid or unenforceable as applied and shall not affect or render invalid or unenforceable any other provision. This Section V shall be construed as if the provision or other basis on which such provisions has been determined to be overly broad had been more narrowly drafted so as not to be invalid or unenforceable.

**VI.   LIMITS ON YOUR AUTHORITY**

You are not authorized to (a) underwrite or approve any loan, (b) bind the Company under any agreement,

DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551

lease, commitment or other obligation, (c) incur expenses on behalf of the Company, unless such expense has been expressly approved in writing by the Company. You must inform each vendor and potential vendor that you are not authorized to bind the Company.

## VII. MANDATORY ARBITRATION AND WAIVER OF RIGHT TO SUE AND RIGHT TO FILE ANY CLASS OR COLLECTIVE ACTION

**(a) Arbitration**

Any and all claims (legal or equitable), demands, disputes, or controversies between you and the Company must be resolved by **arbitration** in accordance with the rules of the American Arbitration Association then in existence. Such arbitration shall take place in Chicago, Illinois, the applicable law will be the laws of the State of Illinois without regard to the conflicts of law provisions therein and the decision of the arbitrator shall be final and binding on you and the Company. Without limiting the foregoing, the following claims must be resolved by arbitration:

(i) Claims related to your compensation with the Company brought under any federal, state or local statute, law, ordinance, regulation or order or the common law of any state, including without limitation claims relating to your wages, salary increases, bonuses, commissions, overtime pay, vacation pay, or severance pay whether or not such claim is based upon a legally protected right, whether statutory, contractual or common law; and

(ii) Claims brought under any federal, state, or local statute, law, ordinance, regulation, or order, or the common law of any state, alleging that you were or are being subject to discrimination, retaliation, harassment, or denial of equal employment opportunity based on sex, race, color, religion, national origin, disability, age, marital status, or any other category protected by law; and/or relating to your benefits or working conditions, including without limitation, claims related to leaves of absence, Employee benefit plans, Employee health and safety, and activity protected by federal labor laws.

**(b) Waiver of Right to Sue and Right to File any Action as a Class or Collective Action**

You and the Company expressly waive any right to resolve any dispute covered by this Agreement by filing suit in court for trial by a judge or jury.

With respect to any and all claims made by you, there will be no right or authority for any dispute to be brought, heard or arbitrated under this Agreement as a class or collective action, private attorney general, or in a representative capacity on behalf of any Person.

**(c) Exclusions.**

The mandatory arbitration provisions of this Agreement do not apply to: (i) any claim by you for workers compensation benefits or unemployment compensation benefits; (ii) any claim for injunctive or equitable relief, including without limitation claims related to unauthorized disclosure of confidential information, trade secrets or intellectual property; or (iii) any action brought relating to or arising out of any non-solicitation violations.

## VIII. APPLICABLE LAW; VENUE

This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without regard to the conflicts of laws provisions therein. You irrevocably consent to the exclusive jurisdiction of the state and federal courts located in Cook County, Illinois, for the purposes of any action or proceeding relating to or arising out of this Agreement and/or your employment with the Company.

## IX. ATTORNEYS' FEES AND COSTS; INJUNCTIVE RELIEF

The Company may recover from you its attorneys' fees and costs relating to any action to enforce, defend and/or prosecute this Agreement. You acknowledge that a breach of any provision of this Agreement will cause irreparable harm to the Company and that monetary damages will be inadequate and may be difficult or impossible to ascertain. Therefore, in the event of any such breach, or threatened breach, in addition to all other remedies, the Company shall have the right to require you to fulfill your obligations by way of temporary and/or permanent injunctive relief.

## X. MISCELLANEOUS

This Agreement, together with any Schedule, is complete and reflects all of the agreements, representations and warranties between you and the Company and supersedes all other agreements (oral or written) in effect prior to the execution of this Agreement. The Company reserves the right to terminate or modify this Agreement at any time. Any delay or failure to enforce any provision of this Agreement by the Company shall not be considered a waiver of such provisions or any other provision of this Agreement.

This Agreement will be effective only after it has been fully executed by you and either the Company's President and CEO or the Chief Operating Officer. This Agreement may only be amended, changed or modified by a writing executed by the Company and the Employee. Notwithstanding the foregoing, the Company may change or amend any Schedule or the amount or manner in which your compensation and related matters are calculated by providing written notice to you.

To the extent a court of competent jurisdiction determines any provision is not enforceable, the parties agree that the court may modify the provision to the minimum extent necessary to make the provision enforceable. Further, any such invalid provision shall not invalidate the remaining provisions, which shall remain in full force and effect.

*I hereby acknowledge that I have reviewed the Guaranteed Rate Sales Compensation Plan. I have had an opportunity to review its terms and understand that this document depicts the conditions of my employment and upon which any compensation will be determined and paid. I agree to comply with and to be bound by the terms of the Plan.*

| Robert Peters | Guaranteed Rate, Inc. |
|---|---|
| (Print your name here) | |
| *Robert Peters* (DocuSigned) | *Nikolaos Athanasiou* (DocuSigned) |
| (Place your signature here) | By: Nikolaos Athanasiou, Chief Operating Officer |
| 12/9/2016 | 1/5/2017 |
| (Date) | (Date) |

# EXHIBIT A

"**Agreement**" means this Retail Sales Compensation Plan and Agreement and any Schedule hereto.

"**Authority**" means any federal, state or municipal governmental agency or regulatory authority, including, but not limited to, the Consumer Financial Protection Bureau, the U.S. Department of Justice, any State attorney general, and any state financial services or consumer protection regulatory authority.

"**Basis Point**" means a unit of measure equal to one hundredth of one percent. One basis point is equal to 1/100th of 1%, or 0.01% (0.0001).

"**Borrower Expenses**" mean all loan-related fees and costs that are payable by a borrower and permitted under applicable Requirements, including appraisal fees, rate lock extension fees and certain other fees.

"**Cause**" has the meaning set forth in Section IV(b).

"**Commission**" means the amount of your variable compensation earned from your loan origination activities and identified as commissions in this Agreement and in the Schedule.

"**Company**" means Guaranteed Rate, Inc.

"**Confidential Information**" has the meaning set forth in Section V(a).

"**Corporate Objective**" means the amount of net revenue that you agree the Company will receive from the sale of each Eligible Loan that you originate, after subtracting all Deductible Expenses and any Borrower Expenses credited back to a borrower.

"**Corporate Objective Shortfall**" means the amount of Net Loan Revenue that falls short of your Corporate Objective with respect to a loan originated by you.

"**Corporate Objective Surplus**" means the amount of Net Loan Revenue that exceeds your Corporate Objective with respect to an Eligible Loan originated by you.

"**Deductible Expenses**" include all costs, third party fees, rate lock extension fees, expenses that would not otherwise have been incurred by the Company but for an error committed by an employee of the Company, and all other costs and expenses associated with the origination of the Eligible Loan, _other than_ the amount of your Commission and any Borrower Expenses credited back to the Borrower by the Company.

"**Draw**" means the non-commissioned dollar amounts that an employer pays a loan officer as an advance of a Commission.

"**Early Payment Default**" means a loan originated by you that defaults during an "Early Payment Default Period," as defined in the Company's loan purchase and sale agreement with the investor that purchased the loan.

"**Early Payoff**" means a loan originated by you that pays off in whole or in part during an "Early Prepayment Period," as defined in the Company's loan purchase and sale agreement with the investor that purchased the loan.

"**Earned Commission**" has the meaning set forth in Section III (c) (2).

"**Eligible Loan**" means each first-lien closed-end mortgage loan that (a) is originated by you, (b) is closed and funded by the Company, (c) is sold to an investor at a price that complies with all Requirements in this Agreement, (d) is not the subject of a Recapture Event, and (e) otherwise complies with all applicable Requirements.

DocuSign Envelope ID: C25E01D2-3259-4725-A01A-FE883DB2B551

"**Fully Recoverable Draw**" means a Draw which, when it exceeds the amount of your Commission during any month, may be recovered by the Company, as described further in Section III(b)(1) of this Agreement.

"**Fully Recoverable Draw Amount**" means the dollar amount by which your monthly Draw exceeds your Commission during any month, which amount may be recovered by the Company, as described further in Section III(b)(1) of this Agreement.

"**Manager**" means your direct supervisor.

"**Net Loan Revenue**" means the net revenue received by the Company in connection with the funding and sale of an Eligible Loan.

"**Outside Sales Employee**" means an outside sales employee, as defined in Section 13(a)(1) of the Fair Labor Standards Act, who are exempt from both minimum wage and overtime pay requirements under the Fair Labor Standards Act.

"**Person**" means any natural Person, corporation, limited liability, partnership, sole proprietorship or any other entity.

"**Recapture Event**" has the meaning set forth in Section III(c)(3) of this Agreement.

"**Recoverable Draw Subject to Minimum Wage**" has the meaning set forth in Section III(b)(2) of this Agreement.

"**Recoverable Draw Subject to Minimum Wage Amount**" means a Draw which, when it exceeds the amount of your Commission during any month, may be recovered by the Company, in the manner described further in Section III(b)(2) of this Agreement.

"**Requirements**" means all (a) applicable laws, rules, regulations, and orders, (b) Company policies, procedures, guidelines and directives (Links to the Company's policies and procedures can be found on the Company's Intranet and also in the Company's employee handbook), (c) applicable investor policies, procedures, guidelines and other requirements, and (d) terms, conditions and obligations in this Agreement.

"**Schedule**" means the Compensation, Corporate Objective and Loan Pricing Schedule to this Agreement.

"**You**" or "**your**" means you, the employee, in your capacity as a Vice President of Mortgage Lending.



# Certificate Of Completion

Envelope Id: C25E01D232594725A01AFE883DB2B551  
Subject: Please DocuSign this document: CP Robert_Peters-_12-08-2016.pdf  
Source Envelope:  
Document Pages: 17  
Certificate Pages: 1  
AutoNav: Enabled  
EnvelopeId Stamping: Enabled  
Time Zone: (UTC-06:00) Central Time (US & Canada)

Status: Completed

Signatures: 2  
Initials: 0

Envelope Originator:  
Francesca Giannis  
222 Lewis Circle Unit 131  
Punta Gorda, FL 33950  
francesca.giannis@rate.com  
IP Address: 209.64.168.66

## Record Tracking

Status: Original  
    12/30/2016 2:08:32 PM

Holder: Francesca Giannis  
    francesca.giannis@rate.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Nikolaos Athanasiou<br>nathanasiou@rate.com<br>Chief Operating Officer<br>Guaranteed Rate, Inc<br>Security Level: Email, Account Authentication (Optional)<br><br>Electronic Record and Signature Disclosure:<br>   Not Offered via DocuSign<br>   ID: | <br>Using IP Address: 209.64.168.66 | Sent: 12/30/2016 2:09:08 PM<br>Viewed: 1/5/2017 9:14:15 AM<br>Signed: 1/5/2017 9:14:43 AM |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 12/30/2016 2:09:08 PM |
| Certified Delivered | Security Checked | 1/5/2017 9:14:15 AM |
| Signing Complete | Security Checked | 1/5/2017 9:14:43 AM |
| Completed | Security Checked | 1/5/2017 9:14:43 AM |