Joshua S. Boyette
jboyette@swartz-legal.com
Swartz Swidler LLC
201 Spear Street, Ste. 1100
San Francisco, CA 94105
Tel: (510) 255-4660
Fax: (510) 255-4660

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PETERS, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GUARANTEED RATE, INC.,<br><br>Defendant. | Case No: 3:23-cv-05602-VC<br><br>**MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF PLAINTIFFS' MOTION FOR AUTHORIZATION TO SEND NOTICE UNDER 29 U.S.C. § 216(b) AND FOR EQUITABLE TOLLING**<br><br>Date: April 4, 2024<br>Time: 10:00 a.m.<br>Ctrm.: 4<br><br>Judge: Vince Chhabria |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND .......................................................................................... 2

III. LEGAL ARGUMENT ..................................................................................................... 4

   A. The Court should conditionally certify this matter as a collective pursuant to Section 216(b). ................................................................................................................................. 4

   B. Authorization to Distribute Notice to the Potential Members of the Collective Action is Appropriate. ........................................................................................................................ 7

   C. Plaintiffs' Proposed Notice Should be Approved. ............................................................ 8

   D. Equitable Tolling of the FLSA's Statute of Limitations for the Claims of Potential Members is Appropriate. .................................................................................................... 9

   E. The alleged existence of enforceable arbitration agreements does not preclude sending notice. ............................................................................................................................... 10

IV. CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Adams v. Inter-Con Sec. Sys.*,
    242 F.R.D. 530 (N.D. Cal. 2007) ....................................................................................... 6

*Basham v. Tailored Living Choices, L.L.C.*,
    No. 23-cv-02678-DMR, 2024 U.S. Dist. LEXIS 27977 (N.D. Cal. Feb. 16, 2024) ............... 5

*Bonner v. SFO Shuttle Bus Co.*,
    No. C13-1606 TEH, 2013 WL 6139758 (N.D. Cal. Nov. 21, 2013) ....................................... 7

*Brewer v. Gen. Nutrition Corp.*,
    No.: 11-CV-03587 YGR, 2013 WL 100195 (N.D. Cal. Jan. 7, 2013) ..................................... 5

*Brown v. Permanente Med. Grp., Inc.*,
    No. 16-cv-05272-VC, 2017 U.S. Dist. LEXIS 15789 (N.D. Cal. Feb. 2, 2017) .............. 6, 7, 9

*Campbell v. City of L.A.*,
    903 F.3d 1090 (9th Cir. 2018) ................................................................................. *passim*

*Cossaboom v. Nvr. Mortg. Fin*,
    2022 U.S. Dist. LEXIS 234187 (S.D. Fla. Feb. 1, 2022) ...................................................... 7

*Costa v. Apple, Inc.*,
    2023 U.S. Dist. LEXIS 208816 (N.D. Cal. Nov. 21, 2023) ................................................. 10

*Daniels v. Aéropostale W., Inc.*,
    No. C 12-05755 WHA, 2013 WL 1758891 (N.D. Cal. Apr. 24, 2013) ............................. 5, 7

*Davis v. Capital One Home Loans, L.L.C.*,
    CIVIL ACTION NO. 3:17-CV-3236-G, 2018 U.S. Dist. LEXIS 130035 (N.D. Tex. Aug. 2, 2018) ..................................................................................................................................... 7

*DeSimone v. TIAA Bank, F.S.B.*,
    No. 20-cv-6492 (AJN), 2021 U.S. Dist. LEXIS 174545 (S.D.N.Y. Sept. 14, 2021) .............. 7

*Gilburd v. Rocket Mortg. L.L.C.*,
    No. CV-23-00010-PHX-DLR, 2023 U.S. Dist. LEXIS 217747 (D. Ariz. Dec. 6, 2023) ........ 6

*Guilbaud v. Sprint/United Mgmt. Co.*,
    No. 14-cv-02642-VC, 2014 WL 10676582 (N.D. Cal. Oct. 3, 2014) ............................ 5, 6, 7

*Hale v. Brinker Int'l, Inc.*,
    2022 U.S. Dist. LEXIS 108488 (N.D. Cal. June 17, 2022) ................................................ 11

*Hamilton v. NuWest Grp. Holdings, L.L.C.*,
    No. C22-1117RSM, 2023 U.S. Dist. LEXIS 89075 (W.D. Wash. May 22, 2023) ............. 6-7

*Herrera v. EOS IT Mgmt. Sols., Inc.*,
   No. 20-CV-01093-LHK, 2020 U.S. Dist. LEXIS 235832 (N.D. Cal. Dec. 14, 2020) ........... 10

*Hill v. R+L Carriers, Inc.*,
   690 F. Supp. 2d 1001 (N.D. Cal. 2010) ................................................................................ 8

*Hoffmann-La. Roche v. Sperling*,
   493 U.S. 165 (1989) ............................................................................................................. 4

*Leuthold v. Destination Am.*,
   224 F.R.D. 462 (N.D. Cal. 2004) ........................................................................................ 5

*McDermott v. Fed. Sav. Bank*,
   No. CV 14-6657 (JMA)(GRB), 2016 U.S. Dist. LEXIS 193962 (E.D.N.Y. May 20, 2016) ... 7

*Ramirez v. Ghilotti Bros.*,
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) ............................................................................ 5-7

*Rosario v. 11343 Penrose, Inc.*,
   No. 2:20-cv-04715-SB-RAO, 2020 U.S. Dist. LEXIS 251689 (C.D. Cal. Oct. 26, 2020) .. 10-11

*Sliger v. Prospect Mortg., L.L.C.*,
   NO. CIV. S-11-465 LKK/EFB, 2011 U.S. Dist. LEXIS 94648 (E.D. Cal. Aug. 23, 2011) .... 7

*Soto v. O.C. Commc'ns, Inc.*,
   319 F. Supp. 3d 1165 (N.D. Cal. 2018) ............................................................................... 9

*Wong v. HSBC Mortg. Corp.*,
   No. C-07-2446 MMC, 2008 U.S. Dist. LEXIS 21729 (N.D. Cal. Mar. 19, 2008) ................ 7

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778 JCS (CONSOLIDATED), 2007 WL 4532218 (N.D. Cal. Dec. 19, 2007) ... 6

*Zaborowski v. MHN Gov't Servs.*,
   No. C 12-05109 SI, 2013 WL 1787154 (N.D. Cal. Apr. 25, 2013) ................................. 5, 7

**Statutes**

9 U.S.C. § 1, *et al.* ..................................................................................................... 11-12

29 U.S.C. § 216 ............................................................................................................. 1, 4

**Regulations**

29 C.F.R. § 541.502 .......................................................................................................... 3

1  **I.     <u>INTRODUCTION</u>**

2         Party Plaintiffs, Robert Peters and each other individual who has filed a Consent to Join

3  this Action ("Plaintiffs") seek authority from the Court to distribute notice to the potential

4  members of this collective action under 29 U.S.C. § 216(b), who worked in the United States for

5  Defendant Guaranteed Rate, Inc. ("Defendant" or "Guaranteed Rate") as a licensed mortgage loan

6  originator ("MLO") at any point from February 23, 2021[1] through the present (hereinafter the

7  potential members of this putative collective are referred to as "Potential Members").

8         Plaintiff Peters brought this action to pursue claims for unpaid overtime wages under the

9  Fair Labor Standards Act ("FLSA") and claims under state law.  Since that time, even without

10 notice and without any discovery from Defendant, more than 30 Party Plaintiffs have joined the

11 proceedings through the opt-in procedures provided in § 216(b). *See* Consent Forms, ECF Docs.

12 6, 7, 8, 12, 14, 15, 16, 19, 21, 24, 29, 30, 37. Plaintiffs allege that Guaranteed Rate uniformly

13 misclassified Plaintiffs and other MLOs across the nation as exempt from overtime wages provided

14 by the FLSA and failed to pay them overtime wages based on the exemption classification.

15        Plaintiffs' instant motion seeks an order conditionally certifying the putative collective

16 action.  The motion should be granted because Plaintiffs and the putative collective action

17 members are similarly situated in that they had and performed the same work duties, were

18 misclassified as exempt outside salespersons by Defendant, and were denied overtime pay despite

19 working more than 40 hours per workweek. In support thereof, Plaintiffs rely on the Complaint's

20 allegations, the sworn declarations of seven similarly situated individuals who worked in various

21 locations throughout the United States, as well as the compensation plans applicable to Plaintiffs

22 and the putative collective.  This evidence demonstrates the identical job duties of Plaintiffs and

23 the putative collective, demonstrate Defendant uniformly misclassifies Plaintiffs and the putative

24 collective as exempt from overtime and fails to provide overtime pay for work in excess of 40

---

[1] As provided *infra*, Plaintiffs seek the Court toll the statute of limitations for all FLSA Potential Members from February 23, 2024, the date of the Parties' initial Rule 26 conference, wherein, despite the Standing Order of this Court, Defendant refused to provide contact information for Potential Plaintiffs.

1 hours per workweek. As provided herein, this evidence is sufficient to meet Plaintiffs' lenient
2 burden to demonstrate they are similarly situated.

3 Accordingly, for these reasons and those provided herein, Plaintiffs respectfully requests
4 this Court to grant their motion.

## II.     FACTUAL BACKGROUND

The instant action was filed on October 31, 2023. Peters worked for Defendant as a licensed mortgage loan originator ("MLO"), holding the position of VP of Mortgage Lending. Declaration of Rober Peters, attached to Declaration of Joshua Boyette, Esq. ("Boyette Decl.") as Ex 1-A. Guaranteed Rate operates a nationwide retail mortgage operation employing individuals as licensed mortgage loan originators. *See, e.g.,* Declarations of Robert Peters, David Ashman, Vidalin Schuler, Laurence Beers, John Schuler, Dennis Fields, and Kevin Cravens, attached to Boyette Decl. as Exs. 1-A - 1-G (collectively "Party Plaintiffs Decl."), ¶ 16. Peters alleges claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and claims under state laws. Specifically, as to his claims under the FLSA, Peters alleges Guaranteed Rate misclassified him and fellow MLOs as exempt outside salespersons and failed to pay them overtime wages of at least one and one-half times their regular rates for each hour worked more than 40 hours in a workweek. Since the filing of this action, more than 30 current or former mortgage loan originators ("MLOs") for Guaranteed Rate have signed written consents to join the FLSA collective action in this case.

It is undisputed that Defendant uniformly classified Plaintiffs, including Party Plaintiffs, and all Potential Members as exempt outside sales employees. *See* Comp. Plan for Robert Peters, at pp. 7, 17 attached to Boyette Decl. as Ex. 1-H; Comp. Plan for David Ashman, at pp. 7, 10, attached Boyette Decl. as Ex. 1-I; Comp. Plan for Vidalin Schuler, at pp. 9, 20, attached to Boyette Decl. as Ex. 1-J; Comp. Plan for John Schuler at pp. 9, 20, attached to Boyette Decl. as Ex. 1-K; and Comp. Plan for Kevin Cravens, pp. 8, 17, attached to Boyette Decl. as Ex. 1-L (referring to Plaintiff and Opt-in Plaintiffs as "Outside Sales Employees … [who] are exempt from … overtime pay requirements under the Fair Labor Standards Act."). And based on this misclassification,

1 Defendant uniformly did not pay them any additional wages for hours worked more than 40 hours
2 in a workweek. See *Id.* (stating MLOs are exempt from overtime wages; Exs. A-G, Declarations,
3 ¶¶ 7-8. Defendant paid Plaintiff, Opt-in Plaintiffs, and Potential Members on a commission basis
4 only. *Id.*

As demonstrated by the declarations and the compensation plans, Plaintiff, Opt-in Plaintiffs, and Potential Members also performed the same job duties of selling mortgages to potential borrowers and consumers and then managing the process of securing such a loan from the initial contact, then through the application process, through the closing of the loan *See* Party Plaintiffs Decl., Exs. 1-A – 1-G, ¶¶ 10-16. During this process, the MLOs obtained significant paperwork and financial information, including loan applications and financial documents, and submitted such information and documents to Defendant. *Id.* The MLOs performed most of their work from a home office, a Guaranteed Rate office, or another fixed location. *Id.* Finally, the MLOs confirm that the job regularly required working more than 40 hours in a workweek, and that Defendant neither tracked their hours worked nor paid them overtime. *Id.* at ¶¶ 7-16.

Defendant may argue that it complied with the FLSA because the Potential Members and Plaintiff qualified as outside salesmen, making them exempt from overtime. But such an argument goes to the merits of the action, which is not appropriate to consider at this early stage in the litigation, before the Parties have engaged in any discovery, especially as Defendant has refused to comply even with its Rule 26 mandatory disclosure requirements.

Nevertheless, even if the Court considered the merits, Plaintiffs have provided evidence that they were misclassified. The declarations submitted in support of this motion demonstrate that they and other loan originators worked out of fixed office locations and consummated their sales over the phone and internet. *See* 29 C.F.R. § 541.502 ("Outside sales does not include sales made by mail, telephone or the Internet … Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business ...")

At this stage, the Court need not and should not determine the merits of Defendant's anticipated exemption defense. Rather, the only issue for the Court to determine at this stage is whether the Potential Members are similarly situated to because have similar job duties and were similarly classified as exempt by Defendant. As the facts above outline, and as set forth in more detail below, Plaintiffs easily meet this burden.

Similarly, Plaintiffs suspect Defendant will argue the Court should deny this motion because Defendant entered into enforceable arbitration agreements with some or all of the potential plaintiffs, and the Court should therefore deny this motion. Any such argument, however, is not material to whether Plaintiffs are similarly situated with the Potential Members, does not constitute a basis to deny notice, and should be addressed at the second stage, after this matter has been conditionally certified.

Thus, for these reasons, which are more fully discussed herein, Plaintiffs respectfully request the Court to conditionally certify this matter as a collective under the FLSA and authorize and order the distribution of notice to the Potential Members.

## III. <u>LEGAL ARGUMENT</u>

### A. <u>The Court should conditionally certify this matter as a collective pursuant to Section 216(b).</u>

The FLSA provides that an employee whose rights were violated under the FLSA may file an action in any state or federal court of competent jurisdiction "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

The Ninth Circuit has held that Party Plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a **<u>similar</u>** issue of law or fact material to the disposition of their FLSA claims. *Campbell*, 903 F.3d 1090, 1117 (9th Cir. 2018). District courts have broad discretion to authorize a party asserting FLSA claims on behalf of others to notify potential "similarly situated" individuals to provide them with the opportunity to "opt in" to the collective action. *Hoffman-La Roche, Inc., v. Sperling*, 493 U.S. 165, 169 (1989).

Because being similarly situated only requires sharing a **<u>similar</u>** issue of law or fact

material to the disposition of FLSA claims, *Campbell,* 903 F.3d at 1117, district courts, including those in this district, typically exercise this discretion by authorizing early notice to potential collective action members, in a process that has been misleadingly named "conditional certification." *See, e.g., Basham v. Tailored Living Choices, LLC,* No. 23-cv-02678-DMR, 2024 U.S. Dist. LEXIS 27977, at *22 (N.D. Cal. Feb. 16, 2024) (conditionally certifying state-wide collective action of instructional assistants).

Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims. *Campbell*, 903 F.3d at 1117. To assess whether plaintiffs are "similarly situated," courts apply a two-step approach involving initial notice to prospective plaintiffs, followed by a later final evaluation whether such plaintiffs are similarly situated. *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 467 (N.D. Cal. 2004); *Guilbaud*, 2014 WL 10676582 at *1 ("Certification of collective actions under the FLSA generally proceed in two stages"); *Ramirez*, 941 F. Supp. 2d at 1203; *Brewer*, 2013 WL 100195 at *2-*3; *Daniels*, 2013 WL 1758891 at *42; *Zaborowski*, 2013 WL 1787154 at *41; *see also Campbell* 903 F.3d at 1109-1110 (9th Cir. 2018) (noting the consensus adoption of the two-stage approach).

At the first stage, the court makes an initial, conditional determination of whether the plaintiff and potential members of the collective are similarly situated, "deciding whether a collective action should be certified for the purpose of sending notice to potential class members." *Ramirez*, 941 F. Supp. 2d at 1203.

At the second stage, after the members of the collective are known and discovery is complete, the court makes a second determination as to the propriety and scope of the class. *Id.* Only the first stage is implicated by the instant motion. *Id.* "The sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Campbell,* 903 F.3d at 1101.

At the initial early stage, "the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id.*

at 1109. The Ninth Circuit has described this review as seeking either "substantial allegations" or a "reasonable basis" for the initial finding and described the level of review as akin to the "plausibility standard, commensurate with the stage of the proceedings." *Id.* (comparing this standard to the *Iqbal* pleading standard). Accordingly, courts have granted conditional certification where the allegations, supported by declarations and/or a limited amount of discovery, show putative collective members were subject to a common policy alleged to be unlawful under FLSA. *See Guilbaud*, 2014 WL 10676582 at *1 (N.D. Cal. Oct. 3, 2014) (Chhabria, J.) (conditionally certifying collective based on consistent statements contained in declarations submitted by the plaintiffs); *Brown*, 2017 WL 1536493 at *2 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.) (same); *see also, Harris*, 716 F. Supp. 2d at 837 (referencing *Gilbert v. Citigroup, Inc.*, 2009 WL 424320, at *2 (N.D. Cal. Feb. 18, 2009) (finding lenient standard met based on declarations from plaintiff and four other individuals).

Because the "initial notice stage determination uses a lenient standard," it "typically results in certification." *Ramirez*, 941 F. Supp. 2d at 1203 (quoting, *Lewis*, 669 F. Supp. 2d at 1128); *see also, Guilbaud*, 2014 WL 10676582 at *1 (N.D. Cal. Oct. 3, 2014) (Chhabria, J.) ("Although certification is not automatic, the plaintiffs' burden is nonetheless a light one"); *Brown*, 2017 WL 1536493 at *1 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.) ("This 'fairly lenient standard' typically results in conditional certification being granted"). Plaintiffs need only show that their claims are similar, not identical to other putative class members. *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536-38 (N.D. Cal. 2007); *Wren v. RGIS Inventory Specialists*, 2007 WL 4532218, at *5 (N.D. Cal. Dec. 19, 2007). Indeed, "many courts have indicated that a plaintiff must simply show 'there is some factual basis beyond the mere averments in their complaint for the class allegations.'" *Id.* "And, courts need not even consider evidence provided by defendants at this stage." *Ramirez*, 941 F. Supp. 2d at 1203 (citing *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009); *Lewis*, 669 F. Supp. 2d at 1128); *Gilburd v. Rocket Mortg. LLC,* No. CV-23-00010-PHX-DLR, 2023 U.S. Dist. LEXIS 217747, at *22 (D. Ariz. Dec. 6, 2023) (certifying nation-wide collective action of mortgage originators); *Hamilton v. NuWest Grp.*

*Holdings, LLC,* No. C22-1117RSM, 2023 U.S. Dist. LEXIS 89075, at *11 (W.D. Wash. May 22, 2023) (conditionally certifying collective action of healthcare workers alleging failure to pay overtime for misclassified per diems); *Soto v. O.C. Communications, Inc.*, No. 17-cv-00251-VC (N.D. Cal. Aug. 31, 2017) (Chhabria, J.); *Brown v. Permanente Med. Grp.,* 2017 WL 1536493 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.) (conditionally certifying nationwide group of call center-based nurses); *Guilbaud v. Sprint/United Mgmt. Co., Inc.*, 2014 WL 10676582 (N.D. Cal. Oct. 3, 2014) (Chhabria, J.) (conditionally certifying a nationwide group of retail store employees asserting FLSA claims based upon allegations of uncompensated pre- and post-shift work, as well as allegations that they performed work during uncompensated meal periods); *Ramirez v. Ghillotti Bros.*, 941 F. Supp. 2d 1197, 1206 (N.D. Cal. 2013) (granting plaintiff's motion for conditional collective action certification); *Bonner v. SFO Shuttle Bus Co.*, No. 13-cv-1606-THE, 2013 WL 6139758, at *5 (N.D. Cal. Nov. 21, 2013) (same); *Flores v. Velocity Exp., Inc.*, No. 12–cv–05790–JST, 2013 WL 2468362, at *8 (N.D. Cal. June 7, 2013) (same); *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1787154, at *4 (N.D. Cal. Apr. 25, 2013) (same); *Daniels v. Aeropostale W., Inc.*, No. 12-cv-05755-WHA, 2013 WL 1758891, at *4 (N.D. Cal. Apr. 24, 2013) (same).

### B. <u>Authorization to Distribute Notice to the Potential Members of the Collective Action is Appropriate.</u>

This Court and others have previously provided notice in similar cases where loan officers were misclassified as outside sales individuals. *See, e.g., Wong v. HSBC Mortg. Corp (USA)*, 2008 U.S. Dist. LEXIS 21729 (N.D. Cal. Mar. 19, 2008) (conditionally certifying collective of loan officers asserting misclassification); *Sliger v. Prospect Mortg., LLC*, 2011 U.S. Dist. LEXIS 94648 (E.D. Cal. Aug. 23, 2011) (same); *see also McDermott v. Fed. Sav. Bank*, 2016 U.S. Dist. LEXIS 193962 (E.D.N.Y. May 20, 2016) (same); *Cossaboom v. Nvr. Mortg. Fin*, 2022 U.S. Dist. LEXIS 234187 (S.D. Fla. Feb. 1, 2022) (same); *DeSimone v. TIAA Bank, FSB*, 2021 U.S. Dist. LEXIS 174545 (S.D.N.Y. Sept. 14, 2021) (same); *Davis v. Capital One Home Loans, LLC*, 2018 U.S. Dist. LEXIS 130035 (N.D. Tex. Aug. 2, 2018) (same).

Similarly, Plaintiffs here easily meet the lenient standard for conditional FLSA certification

because the Potential Collective Members are "similarly situated." *Hill*, 690 F. Supp. 2d at 1009. At this early stage, Plaintiffs here have provided seven declarations from MLOs who work at various locations throughout the United States, along with Defendant's policy documents, all demonstrating that the loan originators all had the same job duties of selling and originating mortgage loans from the initial customer contact through the underwriting and closing of the loan. Party Plaintiffs Decls., Ex. 1-A – 1-G. Moreover, the declarations and Defendant's policy documents equally show that Guaranteed Rate uniformly: (1) paid its loan originators on a commission basis only; (2) failed to pay overtime wages to its loan originators; and (3) misclassified its loan originators as outside sales employees. *See id.*; Defendant's Comp. Plans, Exs. 1-H - 1-L.

Given that **second stage** certification requires only showing that the Party Plaintiffs share a **similar** issue of law or fact material to the disposition of their FLSA claims, *Campbell*, 903 F.3d 1090, 1117 (9th Cir. 2018), here, the core, common, and predominating question of whether Guaranteed Rate misclassified its mortgage originators as exempt from FLSA's overtime pay requirements provides the similar material issue of law and fact demonstrating conditional collective action certification is appropriate.

Accordingly, because Plaintiffs have easily met their relatively lenient burden, Plaintiffs respectfully request the Court grant the instant motion and effectuate notice to the collective.

**C.    Plaintiffs' Proposed Notice Should be Approved.**

Plaintiffs have attached to their motion a copy of the proposed notice, which they seek to mail and e-mail to Potential Members. *See* Exhibit 2. To effectuate notice, Plaintiffs seek the Court order Defendant to produce the last known contact information of all current and former licensed mortgage loan originators of Guaranteed Rate who sold residential mortgages and who were classified as exempt from overtime, including individuals who held the position of VP Of Mortgage Lending, on or after February 23, 2021. This information should be provided in an Excel

spreadsheet with separate columns for: first name, last name, street address, city, state, zip code, e-mail address, phone number, and the employee ID.

The Court should further approve Plaintiffs' proposed notice. Exhibit 2. The notice further explains the case, provides that Defendant denies the claims, provides that the Court has not made any decisions as to merits or whether the case can ultimately proceed collectively, discloses the names of counsel, and provides clear information regarding how to join if the Potential Member wishes to. Plaintiffs have requested an opt-in period of 60 days from the date the notice is mailed, the same time period this Court has previously approved in other cases, *See, e.g., Brown v. Permanente Med. Grp. Inc.*, 2017 U.S. Dist. LEXIS 15789, at *3 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.).

### D. Equitable Tolling of the FLSA's Statute of Limitations for the Claims of Potential Members is Appropriate.

The Could should toll the statute of limitation on potential collective members' claims from the date of the Parties' Rule 26 conferral, which occurred on February 23, 2024. Joint Case Management Statement at 6 (ECF Doc. 38). During the Parties' conference, Plaintiffs sought Defendant to provide the contact information of all FLSA potential plaintiffs, as required by the Court's Standing Order absent "extraordinary circumstances." *Standing Order for Civil Cases before Judge Vince Chhabria* at ¶ 64. Defendant refused to provide such information and to date has not done so. Boyette Decl. at ¶ 12.

This Court has held that an employer's refusal to provide contact information of putative plaintiffs in their initial disclosures constitutes a basis for equitable tolling:

> Going forward, this Court will impose a process in FLSA cases which makes clear that defendants are almost always required to provide the contact information of potential collective members by the time the initial case management conference has taken place. This process is now set forth in this Court's standing order for civil cases. Therefore, at least in cases before this Court, refusal by a future FLSA defendant to promptly produce contact information (subject, of course, to an appropriate protective order) will indeed be a basis for equitable tolling.

*Soto v. O.C. Communs., Inc.*, 319 F. Supp. 3d 1165, 1168 (N.D. Cal. 2018) (Chhabria, J.).

1    Because Defendant refused to provide contact information at the time of the initial case
2 management conference, and because it continues to refuse to provide such information now, the
3 Court should equitably toll the statute of limitations on all Putative Plaintiffs FLSA claims from
4 the date of the initial conference through the end of the opt-in period.

### E. The alleged existence of enforceable arbitration agreements does not preclude sending notice.

Plaintiffs understand that Defendant intends to assert that some or all of the Party Plaintiffs have entered into enforceable arbitration agreements which will require the FLSA claims to be arbitrated rather than resolved in Court. However, such considerations are more appropriate resolved after the initial conditional certification motion, especially where nearly 40 Party Plaintiffs are already before the Court and Defendant has only sought to enforce a single arbitration against a single plaintiff.

As numerous courts from this district have held, whether an enforceable arbitration agreement exists between a plaintiff or potential plaintiff and the Defendant "goes to Defendants' defenses, not the common policy [which is asserted to violate the FLSA]… [T]herefore, the enforceability of the arbitration agreements is better reserved for the step two determination, not step one." *Herrera v. EOS IT Mgmt. Solutions, Inc.*, 2020 U.S. Dist. LEXIS 235832, at *28 (N.D. Cal. Dec. 14, 2020), quoting *Conde v. Open Door Marketing, LLC*, 223 F.Supp.3d 949, 969 (N.D. Cal. 2017) ("the Court concludes that the arbitration agreements do not preclude conditional certification at this point, especially given the lenient standard at step one"). Indeed, "courts in this circuit have consistently determined that the mere possibility of mandatory arbitration should not prevent the conditional certification of a collective action." *Costa v. Apple, Inc.*, 2023 U.S. Dist. LEXIS 208816 (N.D. Cal. Nov. 21, 2023) (finding Apple's request to rule on pending motions to compel arbitration prior to considering the motion for conditional certification "is not legally necessary, nor would it be in the interest of the collective" and certifying collective); *Rosario v. 11343 Penrose, Inc.*, 2020 U.S. Dist. LEXIS 251689, at *5 (C.D. Cal. 2020) ("courts have

1 overwhelmingly determined that the possibility of mandatory arbitration should not prevent the
2 conditional certification of a collective action").

3       There are currently more than 30 Party Plaintiffs before the Court, who are seeking to
4 vindicate their rights under the FLSA. Nevertheless, Defendant has only sought the Court to
5 enforce an agreement against a single plaintiff – Plaintiff Peters. While Plaintiff Peters will reserve
6 his full arguments to oppose Defendant's pending motion seeking to compel him to arbitration
7 when he files his opposition, he notes that the enforceability of such arbitration agreement is
8 contested and Plaintiff Peters will show that the Agreement is significantly more unconscionable
9 in its choice of law, venue, and fee and cost-shifting requirements as the agreement this Court held
10 unenforceable in *Hale v. Brinker Int'l, Inc.*, 2022 U.S. Dist. LEXIS 108488, at *1-4 (N.D. Cal.
11 June 17, 2022) (Chhabria, J.)

12       Regardless, even if the Court were to enforce the agreement against Plaintiff Peters, and
13 even if no other individuals were before the Court, such posture would still not preclude sending
14 notice. Ultimately, the issue for this motion is not whether Plaintiff Peters or other Party Plaintiffs
15 will prevail in contesting an assertion by defendant that they are bound to arbitration and must
16 have the claims resolved by an arbitrator, but whether they are similarly situated regarding the
17 challenged policies under the FLSA.

18       The arbitration agreement which Defendant contends Plaintiff Peters is bound states that
19 the Plaintiff "irrevocably consents to the exclusive jurisdiction of the … federal courts … for
20 purposes of any action or proceeding relating to or arising out of … [his] employment with
21 [Defendant]." (ECF Doc. 39-4 at p. 15 of 37, § VIII). Thus, the alleged agreement specifically
22 provides for this Court to have exclusive jurisdiction over the matter, which would include, at a
23 minimum, overseeing the case, entering judgment, and, where appropriate, issuing notice.

24       The Federal Arbitration Act, 9 U.S.C. § 1, *et al.* ("FAA") does not compel a different result.
25 Under § 3 of the FAA, "[i]f any **suit** or **proceeding** be brought in any court of the United States
26 upon any issue referable to arbitration … the court … upon being satisfied that the issue involved

1 in such **suit** or **proceeding** is referable to arbitration … shall on application of one of the parties
2 **stay the trial** of the action until such arbitration has been had..." 9 U.S.C. § 3 (emphasis added).

Per the plain statutory language of the FAA, even if the Court were to refer the disposition of Plaintiff Peters' FLSA claims to arbitration, the FAA provides the Court should "stay the trial." The FAA does not require a district court stay the "suit or proceeding." And of import, it is clear that if Congress had intended to require the "suit or proceeding" be stayed, rather than the trial, it would have used such phrase, as the single sentence contained in § 3 refers to "suit or proceeding" twice yet only requires the "trial" be stayed.

Thus, even if the final disposition of some of the Party Plaintiffs' claims were referred to arbitration, there is no basis to stay the instant motion or delay sending notice to potential plaintiffs. This is especially true as the FLSA is a remedial statute, and notice serves to provide important information to individuals regarding their statutory rights, a concern which is heightened as an FLSA's claim is not formally tolled until he or she take affirmative action in joining or filing suit against his or her employer.

Accordingly, the Court should defer its decision regarding arbitration until after notice has been effectuated.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that their Motion be granted and that this Court authorize distribution of the Notice to the Potential Members.

Respectfully,
**SWARTZ SWIDLER, LLC**

By: */s Joshua S. Boyette*
    Joshua S. Boyette, Esq.

    Justin L. Swidler, Esq.
    *Admitted Pro Hac Vice*

Dated: February 29, 2024