Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
Tim L. Johnson CA Bar No. 265794
tim.johnson@ogletree.com
Andrew J. Deddeh CA Bar No. 272638
andrew.deddeh@ogletree.com
Brett R. Tengberg CA Bar No. 318436
brett.tengberg@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4660 La Jolla Village Drive, Suite 900
San Diego, CA 92122
Telephone: 858-652-3100
Facsimile: 858-652-3101

Attorneys for Defendants GUARANTEED RATE, INC.; VICTOR
CIARDELLI and NIKOLAOS ATHANASIOU

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PETERS, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GUARANTEED RATE, INC,<br><br>    Defendant,<br><br>And<br><br>VICTOR CIARDELLI<br><br>    Defendant,<br><br>And<br><br>NIKOLAOS ATHANASIOU<br><br>    Defendant. | Case No. 3:23-cv-05602-VC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION**<br><br>Hearing Date: May 23, 2024<br>Hearing Time: 10:00a.m.<br>Courtroom: 4<br><br>Complaint Filed: October 31, 2023<br>Trial Date: None Set<br><br>District Judge: Vince Chhabria |

Case No. 3:23-cv-05602-VC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     THE FEDERAL ARBITRATION ACT ("FAA") APPLIES TO THE
        AGREEMENT TO ARBITRATE ..................................................................... 1

III.    PLAINTIFF ENTERED INTO AN AGREEMENT REQUIRING
        INDIVIDUAL ARBITRATION OF ALL CLAIMS RELATING TO HIS
        EMPLOYMENT AND THE COURT SHOULD FORCE HIM TO
        ADHERE TO IT ............................................................................................. 2

        A.      GRI Met the Requisite Elements to Establish a Binding Agreement
                to Arbitrate – Consent and Consideration ......................................... 3

                1.      The Parties Consented to the Agreement to Arbitrate ......................... 3

                2.      Legal Consideration Supports the Agreement to Arbitrate ................. 4

        B.      The Agreement to Arbitrate Covers Plaintiff's Individual Claims ................ 5

        C.      The Northern District of California Found the Same Arbitration
                Agreement Valid and Enforceable ................................................. 6

IV.     THE COURT MUST ORDER PLAINTIFF'S INDIVIDUAL CLAIMS TO
        ARBITRATION AND DISMISS HIS CLASS CLAIMS BECAUSE HE
        ENTERED INTO A BINDING AGREEMENT REQUIRING IT ........................... 6

V.      PLAINTIFF CANNOT ESTABLISH UNCONSCIONABILITY ............................ 8

        A.      The Agreement to Arbitrate Is Not Procedurally Unconscionable ................ 8

        B.      The Agreement to Arbitrate Is Not Substantively Unconscionable .............. 10

                1.      The Fee Shifting Provision Is Not Unconscionable ......................... 11

VI.     THE COURT SHOULD DISMISS THIS ACTION UNDER FEDERAL
        RULE OF CIVIL PROCEDURE 12(B)(1) OR STAY THE ACTION
        PENDING COMPLETION OF THE INDIVIDUAL ARBITRATION .................. 11

VII.    TO THE EXTENT THE COURT DEEMS ANY PART OF THE
        AGREEMENT TO ARBITRATE UNENFORCEABLE, IT SHOULD
        SEVER TO SAVE AND ENFORCE THE REMAINDER ...................................... 12

VIII.   NONSIGNATORIES MAY ENFORCE ARBITRATION AGREEMENTS ........... 13

IX.     CONCLUSION ............................................................................................ 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Produce Co. v. FMC Corp.*,
    135 Cal.App.3d 473 (1982) .................................................................8, 9, 10

*Abramson v. Juniper Networks, Inc.*,
    115 Cal.App.4th 638 (2004) ...................................................................10

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ...................................................................................2

*Am. Exp. Co. v. Italian Colors Restaurant*,
    133 S.Ct. 2304 (2013) ...............................................................................7

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal.4th 80 (2000) ........................................................................6, 7, 10

*Arreguin v. Global Equity Lending, Inc.*,
    No. C07–06026 MHP, 2008 WL 4104340 (N.D. Cal. Sept. 2, 2008)....................13

*AT&T Mobility LLC v. Concepcion*
    131 S.Ct. 1740 (2011) .........................................................................6, 7, 9

*Bolter v. Superior Court*
    87 Cal.App.4th 900 (2001) ...................................................................8, 13

*Cable Connection, Inc. v. DIRECTV, Inc.*
    44 Cal.4th 1334 (2008) .............................................................................12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ...................................................................3

*Chun Ping Turng v. Guaranteed Rate, Inc.*
    (N.D. Cal. 2019) 371 F.Supp.3d 610........................................................2, 6, 11

*Circuit City Stores, Inc. v. Najd*,
    294 F.3d 1104 (9th Cir. 2002) ....................................................................4

*Cit. Bank v. Alfabaco, Inc.*,
    539 U.S. 52 (2003) .....................................................................................2

*Cruise v. Kroger Co.*,
    233 Cal. App. 4th 390 (2015) .....................................................................4

*Davis v. Nordstrom, Inc.*,
    755 F.3d 1089 (9th Cir. 2014) .................................................................3, 5

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) ................................................................................. 5

*DIRECTV, Inc. v. Imburgia,*
    577 U.S. 47, 136 S. Ct. 463 (2015) ........................................................... 3

*Dotson v. Amgen, Inc.*
    181 Cal.App.4th 975 (2010) ................................................................... 8, 9

*Epic Sys. Corp. v. Lewis*
    138 S. Ct. 1612 (2018) ............................................................................. 7

*Eshagh v. Terminix Intern. Co. L.P.,*
    2012 WL 1669416, *11 (E.D. Cal., 2012) ............................................... 12

*First Options of Chicago, Inc. v. Kaplan*
    514 U.S. 938 (1995) ................................................................................. 7

*In re Gateway LX6810 Computer Products Litig.,*
    2011 WL 3099862 (C.D. Cal. July 21, 2011) ........................................... 9

*Giuliano v. Inland Empire Personnel, Inc.,*
    149 Cal.App.4th 1276 (2007) ................................................................... 2

*Grabowski v. CH Robinson Co.,*
    817 F.Supp.2d 1159 (S.D. Cal. 2011) .................................................... 13

*Green Tree Fin. Corp.-Ala. V. Randolph,*
    531 U.S. 79 (2000) ................................................................................... 8

*Gutierrez v. Autowest, Inc.*
    114 Cal.App.4th 77 (2003) ..................................................................... 12

*Hermosillo v. Davey Tree Surgery Co.,*
    No. 18-CV-00393-LHK, 2018 U.S. Dist. LEXIS 117426 (N.D. Cal., July 13,
    2018) ..................................................................................................... 3, 4

*Howsam v. Dean Witter Reynolds, Inc.*
    537 U.S. 79 (2002) ................................................................................... 7

*Katzenbach v. McClung*
    379 U.S. 294 (1964) ................................................................................. 2

*Kindred Nursing Centers Ltd. Partnership v. Clark,*
    137 S.Ct. 1421 (2017) .............................................................................. 6

*KKE Architects, Inc. v. Diamond Ridge Development LLC,*
    2008 U.S. Dist. LEXIS 17127 (C.D. Cal. 2008) .................................... 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014) ....................................................................................3

*Lamps Plus, Inc. v. Varela*,
  139 S.Ct. 1407 (2019) ............................................................................................7

*Lewis v. UBS Financial Services Inc.*,
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) ................................................................12

*Luna v. Kemira Specialty, Inc.*
  575 F. Supp. 2d 1166 (C.D. Cal. 2008) ................................................................12

*Mance v. Mercedes-Benz, USA*,
  901 F. Supp. 2d 1147 (N.D. Cal. 2012) ..................................................................9

*Mercury Ins. Group. v. Superior Court*,
  19 Cal.4th 332 (1998) ..............................................................................................7

*Oakland-Alameda County Coliseum Auth. v. CC Partners*
  101 Cal.App.4th 635 (2002) ..................................................................................12

*Oguejiofor v. Nissan*,
  2011 U.S. Dist. LEXIS 99180 (N.D. Cal. Sept. 2, 2011) (Chen, J.) ........................4

*United States ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999) ...................................................................................3

*Pac. Invest. Co. v. Townsend*
  58 Cal.App.3d 1 (1976) ............................................................................................7

*Pearson Dental Supplies, Inc. v. Superior Court*,
  48 Cal.4th 665 (2010) ............................................................................................11

*Pereyra v. Guaranteed Rate, Inc.*,
  No. 18-CV-06669-EMC, 2019 WL 2716519 (N.D. Cal., June 28, 2019) ...............2, 6, 12, 13

*Pope v. Sonatype, Inc.*,
  No 5:15-cv-00956-RMW, 2015 WL 2174033 (N.D. Cal. May 8, 2015) ................13

*Quevedo v. Macy's, Inc.*,
  798 F. Supp. 2d 1122 (C.D. Cal. 2011) ................................................................12

*Roman v. Superior Court*
  172 Cal.App.4th 1462 (2009) ..................................................................................8

*Shepard v. Edward Mackay Enters*,
  148 Cal.App.4th 1092 (2007) ..................................................................................2

*Sparling v. Hoffman Construction Company*,
  864 F.2d 635 (9th Cir. 1988) ................................................................................11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION

*Stirlen v. Supercuts, Inc.*,
    51 Cal.App.4th 1519 (1997) ...................................................................................8

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
    559 U.S. 662 (2010) ..........................................................................................7

*Strotz v. Dean Witter Reynolds, Inc.*,
    223 Cal. App. 3d 208 (1990), *overruled on other grounds by Rosenthal v. Great*
    *W. Fin. Sec. Corp.,* 14 Cal. 4th 394 (1996) .............................................4

*Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.*,
    368 F.3d 1053 (9th Cir. 2004) .............................................................12

*Truly Nolen of America v. Superior Court*,
    208 Cal.App.4th 487 (2012) ...................................................................7

*Ulbrich v. Overstock.com, Inc.*,
    887 F.Supp.2d 924 (N.D. Cal. 2012) ......................................................9

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
    25 Cal.App.3d 987 (Cal. Ct. App. 1972) ...............................................4

**Statutes**

9 U.S.C. § 2 ..........................................................................................2, 7, 8

9 U.S.C. § 3 ..............................................................................................12

9 U.S.C. § 4 ................................................................................................7

Cal. Civ. Code § 1550 ..............................................................................3

Cal. Civ. Code § 1670.5 ..........................................................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION

## I.     INTRODUCTION

Plaintiff Robert Peters ("Plaintiff") entered into a written agreement ("Arbitration Agreement") with Defendant Guaranteed Rate, Inc. ("GRI") to utilize binding arbitration as the sole and exclusive means to resolve all disputes arising out of his employment with GRI. He also agreed to arbitrate all claims on an individual basis only. Despite this agreement, Plaintiff initiated the current court action against GRI alleging hyper-technical wage and hour violations on behalf of himself and others under the California Labor Code and Fair Labor Standards Act. (ECF 1) Plaintiff's agreement to arbitrate on an individual basis is valid and binding, and no defenses to enforcement exist. This is the same conclusion numerous other courts have reached on identical arbitration agreements that GRI sought to enforce. (*See* Request for Judicial Notice "RJN" Nos. 1-3) Accordingly, GRI moves the Court for an order compelling arbitration of Plaintiff's individual claims, dismissing his class claims, and dismissing or staying his individual proceedings in court pending completion of the individual arbitration.

Defendant GRI filed its Motion to Compel Arbitration to Plaintiff's original Complaint on February 23, 2024. (ECF 39) However, Plaintiff did not timely file an opposition. (ECF 50-1, ¶ 4) In an effort to avoid a default, Plaintiff filed an Amended Complaint. (ECF 47) Nothing in the Amended Complaint addressed GRI's initial motion. The only difference between the Complaint and the Amended Complaint is the Amended Complaint adds two individual defendants – notably, two of the highest-ranking officials at GRI: the CEO (Victor Ciardelli) and the COO (Nikolaos Athanasiou). (ECF 50-1 ¶ 5.) This addition has no legal consequence to the motion which was highlighted in GRI's Reply. (ECF 50) Plaintiff's failure to file a timely opposition to the previous motion means GRI's previous motion (ECF 39) should be granted in its entirety. However, out of an abundance of caution, Defendants GRI, Ciardelli and Athanasiou file this instant Motion to Plaintiff's First Amended Complaint.

## II.     THE FEDERAL ARBITRATION ACT ("FAA") APPLIES TO THE AGREEMENT TO ARBITRATE

The Court should resolve this dispute under the Federal Arbitration Act ("FAA"). An arbitration agreement only must evidence a transaction involving commerce for the FAA to apply.

(9 U.S.C. § 2.) Courts broadly construe this standard to encompass the full reach of Congress' commerce power. (*Cit. Bank v. Alfabaco, Inc.*, 539 U.S. 52, 56 (2003).) The dispute itself need not implicate interstate commerce for the FAA to apply. (*Id.*; *Shepard v. Edward Mackay Enters*, 148 Cal.App.4th 1092, 1101 (2007).) Rather, it is well-settled that corporations with multi-state business operations are engaged in "commerce" for purposes of the FAA. (*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 282 (1995) (multi-state nature of defendants' business operations satisfied FAA's commerce requirement); *Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal.App.4th 1276, 1286-87 (2007) (FAA's interstate commerce requirement was met given employer's interstate business activities in California and Arizona).) The FAA governs any arbitration agreement that affects commerce in any way, including where a company offering the agreement merely receives goods or resources from out of state. (*Allied-Bruce Terminix*, 513 U.S. at 265; *Katzenbach v. McClung* 379 U.S. 294, 304 (1964) (restaurant serving food from out of state was involved in interstate commerce).)

GRI is organized under the laws of Delaware and has its principal place of business in Chicago, Illinois. GRI provides mortgage loan services to customers in every state in the United States and assists customers in obtaining loans for out-of-state real property. GRI operates and has employees in multiple states, including California, Illinois, and New York. (ECF 39-2, ¶ 2.) GRI's national presence and its business of assisting customers in securing loans for out-of-state real property affects interstate commerce sufficiently for the FAA to apply.[1] Therefore, the FAA governs.

### III. PLAINTIFF ENTERED INTO AN AGREEMENT REQUIRING INDIVIDUAL ARBITRATION OF ALL CLAIMS RELATING TO HIS EMPLOYMENT AND THE COURT SHOULD FORCE HIM TO ADHERE TO IT

GRI provided Plaintiff with a document titled "Compensation Terms" in connection with his employment. It sets forth the criteria and calculations for earning commissions at GRI and it contains a separate section entitled "Mandatory Arbitration and Waiver of Right to Sue and Right to File Any Class or Collective Action" (the "Arbitration Agreement"). (Declaration of Kristen Gerace ("Gerace

---

[1] In the *Turng*, *Pereyra*, and *Travalini* cases, the courts applied the FAA to determine whether to compel arbitration, which they did in each instance (*See* RJN Nos. 1, p. 5; RJN Nos. 2, p. 5; *see generally* RJN Nos. 3).

Decl."), ¶ 2; Ex. 1, p. 14.) Plaintiff executed the document via DocuSign on or about December 9, 2016. (*Id.,* Ex. 1). When he did so, DocuSign generated a Certificate of Completion showing the date he signed it. (*Id.*, Ex. 7).

Under the Agreement, Plaintiff and GRI agreed to binding arbitration of claims on an individual basis only. The Agreement states in capitalized and bold letters: "Mandatory Arbitration And Waiver Of Right To Sue And Right To File Any Class Or Collective Action." It also states, "Any and all claims (legal or equitable), demands, disputes, or controversies between you and the Company must be resolved by **arbitration** in accordance with the rules of the American Arbitration Association then in existence. (Gerace Decl., ¶ 2; Ex. 1, p. 14, Section VII (emphasis added).)

Plaintiff reviewed and executed the Arbitration Agreement with GRI, thereby agreeing to have his employment-related claims resolved on an individual basis through binding arbitration with AAA. (*Id.*, Ex. 1, p. 14, Section VII).

### A. GRI Met the Requisite Elements to Establish a Binding Agreement to Arbitrate – Consent and Consideration

When determining whether a valid contract to arbitrate exists, a federal court applies ordinary state-law principles that govern contract formation. (*DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 136 S. Ct. 463, 473 (2015) (reversing a California state court that had failed to do so); *see also Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002).) Arbitration agreements are presumed to be valid, and the party seeking to avoid arbitration bears the burden of demonstrating otherwise. (*See, e.g., Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000).)

Under California law, a contract requires (1) the parties' consent and (2) consideration. (Cal. Civ. Code § 1550; *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).) Both of these prerequisites are met here.

### 1. The Parties Consented to the Agreement to Arbitrate

"It is undisputed that under California law, mutual assent is a required element of contract formation." (*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).) ) Words or conduct may also demonstrate assent. (*Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2018

U.S. Dist. LEXIS 117426, at *13 (N.D. Cal., July 13, 2018).) Likewise, courts may imply acceptance of contract terms through action or inaction. (*Id.*) Even where an offeree of a contract does not know all the terms of a contract, but accepts it anyway, it binds the offeree. (*Windsor Mills, Inc. v. Collins & Aikman Corp.* 25 Cal.App.3d 987, 99 (Cal. Ct. App. 1972).)

Plaintiff reviewed and signed the Arbitration Agreement, placing his signature in a box directly below an acknowledgment statement that was both bolded and italicized stating: "***I hereby acknowledge that I have reviewed the Guaranteed Rate Sales Compensation Plan. I have had an opportunity to review its terms and understand that this document depicts the conditions of my employment and upon which any compensation will be determined and paid. I agree to comply with and to be bound by the terms of the Plan***." (Gerace Decl., Ex. 1, p. 15.) Next, the DocuSign review process requires multiple steps to access, review, and ultimately sign the document. Plaintiff reviewed and signed the agreement at his own leisure and failed to ask any questions or negotiate the terms of the Arbitration Agreement. (*Id.*, ¶ 12).

GRI demonstrated its consent by (1) executing the Arbitration Agreement; and (2) presenting and sending the Arbitration Agreement to Plaintiff, using its resources and email account. *See, e.g., Cruise v. Kroger Co.*, 233 Cal. App. 4th 390, 397-99 (2015) (employer bound where arbitration agreement on company letterhead and contained language agreeing to mandatory final and binding arbitration); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer bound to arbitration based on an arbitration agreement it prepared and presented). On January 5, 2017, GRI's Chief Operating Officer, Nikolaos Athanasiou, executed the Compensation Terms on behalf of GRI. (Gerace Decl., ¶ 13, Ex. 8).

### 2.     Legal Consideration Supports the Agreement to Arbitrate

Next, "[t]he parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other." (*Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by Rosenthal v. Great W. Fin. Sec. Corp.,* 14 Cal. 4th 394 (1996); *accord Najd*, 294 F.3d at 1108 (employer's promise to be bound by the arbitration process supplies adequate consideration); *Oguejiofor v. Nissan*, 2011 U.S. Dist. LEXIS 99180, at *8-9 (N.D. Cal. Sept. 2, 2011) (Chen, J.) (same).

The Arbitration Agreement states, "Any and all claims (legal or equitable), demands, disputes, or controversies between you and the Company must be resolved by arbitration…." (Gerace Decl., Ex. 1, p. 14, Section VII(a).) "[Plaintiff] and the Company expressly waive any right to resolve any dispute covered by this Agreement by filing suit in court for trial by a judge or jury." (*Id.*, p. 14, Section VII(b).) The parties' mutual agreement to waive their right to proceed in court constitutes sufficient consideration for an enforceable contract.

**B.**     <u>The Agreement to Arbitrate Covers Plaintiff's Individual Claims</u>

A court addressing a motion to compel arbitration must decide as a gateway issue "whether the agreement encompasses the dispute at issue." (*Davis v. Nordstrom*, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014) (citing *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1057-58 (9th Cir. 2013) (en banc)). Where a dispute falls within the scope of an agreement to arbitrate, the FAA requires the district court to direct the parties to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Arbitration Agreement requires "[a]ny and all claims (legal or equitable), demands, disputes, or controversies between you and the Company must be resolved by arbitration…." (Gerace Decl., Ex. 1, p. 14, Section VII(a).) The Arbitration Agreement covers "[c]laims related to your compensation with the Company brought under any federal, state or local statute, law, ordinance, regulation or order or the common law of any state, including without limitation claims relating to your wages, salary increases, bonuses, commissions, overtime pay, vacation pay, or severance pay whether or not such claim is based upon a legally protected right, whether statutory, contractual or common law." (*Id.*, p. 14, Section VII(a)(i).) The Arbitration Agreement mandates that the resolution of such claims be done in an individual capacity. (*Id.*, p. 14, Section VII(b) "…[T]here will be no right or authority for any dispute to be brought, heard, or arbitrated under this Agreement as a class or collective action, private attorney general, or in a representative capacity on behalf of any Person.").

Plaintiff's First Amended Complaint includes seven counts for his individual wage and hour violations: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide paid rest periods; (4) failure to pay all earned wages after separation; (5) failure to furnish timely and accurate wage statements; (6) violation of California's Unfair Competition Act; and (7) violation of

the Labor Code. *(See generally* First Amended Complaint). Every count relates to Plaintiff's employment and compensation with GRI. Additionally, every count pertains to alleged statutory violations of the California Labor Code or Fair Labor Standards Act, which are specifically identified as claims subject to arbitration under Section VII(a)(i) of the Arbitration Agreement. As such, the Arbitration Agreement covers all of Plaintiff's claims in the dispute.

## C. The Northern District of California Found the Same Arbitration Agreement Valid and Enforceable

On January 17, 2019, the Hon. Edward M. Chen granted GRI's Motion to Compel Arbitration in *Turng v. Guaranteed Rate, Inc.,* case no. 18-cv-02642-E. (RJN No. 1.). There, Turng had signed a Compensation Agreement containing the exact same Arbitration Agreement and severability clause as the agreement signed by Plaintiff in this dispute. (*Id*.; *see also Chun Pnig Turng v. Guaranteed Rate, Inc.* (*Chun Ping Turng v. Guaranteed Rate, Inc.,* (N.D. Cal. 2019) 371 F.Supp.3d 610.) Like Plaintiff, Turng filed an employment class action despite the Arbitration Agreement. (RJN No. 1.) GRI brought a Motion to Compel Arbitration. (*Id*.) In granting GRI's Motion, Judge Chen severed two "objectionable" provisions from the agreement (the choice of law provision and exceptions to arbitration for claims for injunctive relief and enforcement of the non-solicitation clause). (*Id*.) However, Judge Chen found that these provisions did not "permeate" the agreement and could be "severed without re-writing the agreement." (*Id*. at p. 26.) Judge Chen found the Arbitration Agreement enforceable and ordered Turng's claims to arbitration. (Id.) Following its decision in *Turng,* Judge Chen enforced the same arbitration agreement on similar grounds in *Pereyra v. Guaranteed Rate, Inc*., case no. 18-cv-06669-EMC. (RJN, No. 2, p. 18).

## IV. THE COURT MUST ORDER PLAINTIFF'S INDIVIDUAL CLAIMS TO ARBITRATION AND DISMISS HIS CLASS CLAIMS BECAUSE HE ENTERED INTO A BINDING AGREEMENT REQUIRING IT

The FAA and the California Arbitration Act ("CAA") embody strong public policies favoring arbitration. *(See, e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 80, 97-98 (2000) ("*Armendariz*"); *AT&T Mobility LLC v. Concepcion* 131 S.Ct. 1740, 1745 (2011) ("*Concepcion*").) Congress enacted the FAA to reverse longstanding judicial hostility to arbitration agreements and place them on equal footing with other contracts. (*Kindred Nursing Centers Ltd.*

*Partnership v. Clark*, 137 S.Ct. 1421, 1424 (2017); *Concepcion,* 131 S.Ct. at 1745.) The FAA makes private agreements to arbitrate valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (9 U.S.C. § 2.) It evinces a strong public policy in favor of arbitration, mandating that courts "*shall* make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*." (9 U.S.C. § 4 (emphasis added).) This includes terms providing for *individualized* proceedings. (*Epic Sys. Corp. v. Lewis* 138 S. Ct. 1612, 1619 (2018).) California has a similarly strong public policy favoring arbitration. (*Armendariz,* 24 Cal. 4th at 97-98; *Mercury Ins. Group. v. Superior Court*, 19 Cal.4th 332, 342 (1998).) "[A]rbitration is highly favored as a method for settling disputes." (*Pac. Invest. Co. v. Townsend* 58 Cal.App.3d 1, 9 (1976).)

Under the FAA and binding Supreme Court precedent, "courts must 'rigorously enforce' arbitration agreements." (*Am. Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013).) Upholding and enforcing individualized proceedings is consistent with the Supreme Court's holding that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (*Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83 (2002).) It is consistent with the Supreme Court's rule that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (*First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938, 944 (1995).) Thus, "it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 684 (2010).) California courts agree. "[I]f the court finds there is no contractual basis for finding the parties mutually agreed to classwide arbitration, the court should order the matter to arbitration on an *individual* basis." (*Truly Nolen of America v. Superior Court*, 208 Cal.App.4th 487, 516 (2012) (emphasis added).) Nor may courts "reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." (*Epic Systems*, 138 S.Ct. at 1623.) In *Lamps Plus*, the Supreme Court ruled that class arbitration may not be ordered even if the agreement is ambiguous as to whether class arbitration is authorized. (*Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1418-1419 (2019).) Thus, where an arbitration agreement contains a clear class waiver, a court

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION

1  *must* compel individual arbitration and dismiss class claims.

2      The Arbitration Agreement requires *individual* arbitration of all claims relating to Plaintiff's

3  employment. Given the FAA and the Supreme Court's mandate to enforce arbitration agreements

4  according to their terms, including terms providing for individualized proceedings, the Court should

5  order Plaintiff to arbitrate on an individual basis and dismiss class claims.

6  **V.    PLAINTIFF CANNOT ESTABLISH UNCONSCIONABILITY**

7      A court must enforce an arbitration agreement unless there is a legal or equitable basis for

8  revocation under applicable contract law. (9 U.S.C. § 2.) As the party seeking to avoid arbitration,

9  the plaintiff bears the burden of proving any defenses to enforcement of the agreement. (*Green Tree*

10 *Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 91-92 (2000) (party resisting arbitration bears the burden

11 of proving that the claims at issue are unsuitable for arbitration).) Plaintiff cannot meet this burden.

12     GRI anticipates that Plaintiff may argue the Arbitration Agreement is unconscionable.

13 Unconscionability has both a procedural and a substantive element. For an arbitration agreement to

14 be unenforceable, it must contain both. (*A&M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486-

15 487 (1982); *Stirlen v. Supercuts, Inc*., 51 Cal.App.4th 1519, 1533 (1997).) A court will deem an

16 arbitration agreement unenforceable only if the agreement is "permeated with unconscionability."

17 (*Bolter v. Superior Court* 87 Cal.App.4th 900, 910-911 (2001).)

18     **A.    The Agreement to Arbitrate Is Not Procedurally Unconscionable**

19     Determining whether an agreement is procedurally unconscionable requires analysis of two

20 factors: "oppression" and "surprise." (*A&M Produce,* 135 Cal.App.3d at 486.) "Oppression" occurs

21 where there is an inequality of bargaining power, resulting in no real negotiation, and an "absence of

22 meaningful choice." (*Id.*) That an agreement is one of adhesion is not sufficient on its own to support

23 a finding of procedural unconscionability. (*Dotson v. Amgen, Inc.* 181 Cal.App.4th 975, 981-82

24 (2010); *Roman v. Superior Court* 172 Cal.App.4th 1462, 1471 (2009).) Nor does the drafting party's

25 superior bargaining position support such a finding. (*A&M Produce*, 135 Cal.App.3d at 486.)

26 "Surprise" exists where the actual terms "are hidden in a prolix printed form drafted by the party

27 seeking to enforce the disputed terms." (*Id.*). The Arbitration Agreement contains no level of

28 procedural unconscionability.

First, parties of equal bargaining power entered the Arbitration Agreement. Before accepting his employment with GRI, Plaintiff received the Arbitration Agreement electronically, reviewed and accepted its terms fully at his convenience, and he did not question or request to negotiate the terms. (Gerace Decl., ¶ 12).

Next, the Arbitration Agreement expressly states that arbitration will be resolved "in accordance with the rules of the American Arbitration Association then in existence." (Gerace Decl., Ex. 1, p. 14, Section VII(a).) "Under general California rules of contract interpretation, matters like the AAA rules can be incorporated into a contract by reference provided the incorporation is clear and the incorporated rules are readily available. (*See Ulbrich v. Overstock.com, Inc.*, 887 F.Supp.2d 924, 932 (N.D. Cal. 2012).) Both conditions are met here, demonstrating an absence of procedural unconscionability.

Defendant anticipates that Plaintiff will argue that the Arbitration Agreement is procedurally unconscionable because GRI offered it on a take it or leave it basis (i.e., that it was "adhesive"). As a matter of law, a contract of adhesion is not per se unconscionable. (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 981-82.). Nor is the fact the drafting party occupies a superior bargaining position. (*A&M Produce*, *supra,* 135 Cal.App.3d at p. 486.) In fact, the Supreme Court's ruling in *Concepcion* "pushes against finding that an adhesive contract, without more, is per se procedurally unconscionable." (*Mance v. Mercedes-Benz, USA*, 901 F. Supp. 2d 1147, 1161-62 (N.D. Cal. 2012), citing *ATT Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)*; In re Gateway LX6810 Computer Products Litig.*, 2011 WL 3099862, at *3 (C.D. Cal. July 21, 2011) ("In California, 'a contract of adhesion is fully enforceable according to its terms unless certain other factors are present which, under established legal rules — legislative or judicial — operate to render it otherwise.'").)

The element of surprise is not a factor in this situation. The provisions in the Arbitration Agreement are clear and legible, with an unmistakable title notifying the reader it is an arbitration provision. (Gerace Decl., ¶ 2; Ex. 1, p. 14.) The title and important words are set forth in bold font and capital letters. (*Id.*) The Arbitration Agreement itself is short and concise, consisting of less than a page, which is printed in an easily readable font and size. (*Id.*). It also sets forth the terms clearly and precisely in separately numbered sections. (*Id.*) At the end of the document, above Plaintiff's

signature, is his acknowledgment in bold font and italics stating: "I hereby acknowledge that I have reviewed the Guaranteed Rate Sales Compensation Plan. I have had an opportunity to review its terms and understand that this document depicts the conditions of my employment and upon which any compensation will be determined and paid. I agree to comply with and to be bound by the terms of the Plan." (*Id.*, p. 15.) No element of surprise exists.

Since Plaintiff cannot establish procedural unconscionability, the Agreement is necessarily not unconscionable and must be enforced. (*A&M Produce Co.*, 135 Cal.App.3d at 486-487.)

## B.  <u>The Agreement to Arbitrate Is Not Substantively Unconscionable</u>

Even where an agreement is procedurally unconscionable, it must also contain a sufficient level of substantive unconscionability to be unenforceable. (*Armendariz,* 24 Cal.4th at 114.) Substantive unconscionability focuses on "overly harsh" or "one-sided" terms or results. (*A&M Produce,* 135 Cal.App.3d at 487.) However, "unconscionability turns not only on a one-sided result, but also on an absence of justification for it." (*Id.* (citation omitted).) Substantive unconscionability exists only where an agreement is so harsh or one-sided that it shocks the conscience and lacks even a modicum of bilaterality. (*Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 656-57 (2004).) "[T]he paramount consideration in assessing conscionability is mutuality." (*Id.*)

The Arbitration Agreement contains clear language evidencing mutuality and the language applies to claims brought by either party. (*See e.g.,* Gerace Decl., Ex. 1, p. 14, Section VII(a) ("Any and all claims (legal or equitable), demands, disputes, or controversies between you and the Company…); *see also Id.*, Section VII(b) ("You and the Company expressly waive any right to resolve any dispute covered by this Agreement by filing suit in court for trial by judge or jury.").) The terms are neither harsh nor one-sided, but rather bilateral in nature. Consequently, the Plaintiff cannot establish substantive unconscionability. Therefore, the Agreement is enforceable.[2]

/ / /

---

[2] As noted above, Judge Chen severed two "objectionable" provisions from the Compensation Agreement (the choice of law provision and exceptions to arbitration for claims for injunctive relief and enforcement of the non-solicitation clause). (RJN No. 1.) GRI does not object to the Court doing the same here and has removed those provisions from more recent agreements in keeping with Judge Chen's order (*See* RJN, No. 3).

**1.**     <u>The Fee Shifting Provision Is Not Unconscionable</u>

GRI anticipates that Plaintiff will argue that the fee shifting provision in Section IX of agreement allows GRI to recover its attorney fees should it prevail in arbitration. This is false. The express language of the fee-shifting provision states "The Company may recover from you its attorneys' fees and costs relating to any action to enforce, defend, and/or prosecute this Agreement." (Gerace Decl., Ex. 1, p. 15, Section IX [emphasis added].) Plaintiff's claims are brought under the Labor Code and are not claims concerning breach of contract; therefore, the provision does not, and cannot, apply. GRI acknowledges that it cannot seek fees from Plaintiff in the present dispute. Notably, the provision does nothing to impede Plaintiff from pursuing one-way attorney fees for his Labor Code claims.

When an arbitration provision is ambiguous, the Court should interpret the provision, if reasonable, in a manner that renders it lawful due to the public policy favoring arbitration as a speedy and relatively inexpensive means of dispute resolution, and because of the general principle that the Court should interpret a contractual provision in a manner that renders it enforceable rather than void." (*Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal.4th 665, 682 (2010).). The language of the fee-shifting provision does not apply to Plaintiff's Labor Code claims, which do not concern a dispute of the agreement itself.[3]

**VI.**    <u>**THE COURT SHOULD DISMISS THIS ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) OR STAY THE ACTION PENDING COMPLETION OF THE INDIVIDUAL ARBITRATION**</u>

The only avenue by which Plaintiff may pursue claims against GRI is through arbitration and on an individual basis. Under such circumstances, the Ninth Circuit has held courts may exercise discretion and dismiss actions in their entirety. As the Ninth Circuit stated in *Sparling v. Hoffman Construction Company*, 864 F.2d 635, 638 (9th Cir. 1988):

> 9 U.S.C. § 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause. Thus, the provision did not limit the court's

---

[3] The *Turng* Court held that a "reasonable interpretation of [Section X] is that the fee shifting provision does not apply to this matter as the cause of action arises under the Labor Code not a dispute over the contract itself." (RJN, No. 1, p. 21).

authority to grant a dismissal in the case.

*See e.g. KKE Architects, Inc. v. Diamond Ridge Development LLC*, 2008 U.S. Dist. LEXIS 17127, *14 (C.D. Cal. 2008) (if there is an enforceable arbitration agreement, courts may dismiss or stay judicial action); *Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir. 2004) (dismissing claims subject to arbitration agreement); *Lewis v. UBS Financial Services Inc.,* 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011) (holding where a dispute is subject to arbitration under a written agreement, courts have discretion under 9 U.S.C. § 3 to dismiss); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1143 (C.D. Cal. 2011) (FAA authorizes a court to grant a stay pending arbitration, but it does not "limit the court's authority to grant a dismissal" where the court requires a plaintiff "to submit all claims to arbitration"); *Luna v. Kemira Specialty, Inc.* 575 F. Supp. 2d 1166, 1178 (C.D. Cal. 2008) (a court may dismiss if it finds that all claims before it are arbitrable); *Eshagh v. Terminix Intern. Co. L.P.*, Slip Copy, 2012 WL 1669416, *11 (E.D. Cal., 2012) (where a dispute is subject to arbitration under a written agreement, a court may dismiss claims).

Alternatively, the FAA provides for a stay to continue until the arbitration concludes. (9 U.S.C. § 3.) Staying the action pending arbitration of Plaintiff's individual claims is appropriate under federal law.

**VII.** **TO THE EXTENT THE COURT DEEMS ANY PART OF THE AGREEMENT TO ARBITRATE UNENFORCEABLE, IT SHOULD SEVER TO SAVE AND ENFORCE THE REMAINDER**

Courts routinely modify or sever unenforceable provisions from otherwise enforceable agreements. (Cal. Civil Code § 1670.5; *Gutierrez v. Autowest, Inc.* 114 Cal.App.4th 77, 92 (2003).) Courts are particularly apt to sever an objectionable clause where the parties have agreed to do so. (See, *Oakland-Alameda County Coliseum Auth. v. CC Partners* 101 Cal.App.4th 635, 646-47 (2002), disapproved of on other grounds by *Cable Connection, Inc. v. DIRECTV, Inc.* 44 Cal.4th 1334 (2008).) "[S]everability 'clauses evidence the parties' intent that, to the extent possible, the valid provisions of the contracts be given effect, even if some provision is found to be invalid.'" (*Pereyra v. Guaranteed Rate, Inc.*, No. 18-CV-06669-EMC, 2019 WL 2716519, at *10 (N.D. Cal., June 28, 2019) (citing *Baeza v. Superior Court*, 201 Cal.App.4th 1214 (2011).)

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION

Under this analysis, courts will sever multiple provisions. (*Bolter v. Superior Court* 87 Cal.App.4th 900, 911 (2001) (severing multiple unconscionable provisions, including forum selection provisions); *Pereyra*, 2019 WL 2716519, at *10-11 (same); *Grabowski v. CH Robinson Co.*, 817 F.Supp.2d 1159, 1178-79 (S.D. Cal. 2011) (same, including injunctive relief provision); *Pope v. Sonatype, Inc.*, No 5:15-cv-00956-RMW, 2015 WL 2174033, at *6-7 (N.D. Cal. May 8, 2015) (same, including fee and injunctive relief provisions); *Arreguin v. Global Equity Lending, Inc.*, No. C07–06026 MHP, 2008 WL 4104340, at *8 (N.D. Cal. Sept. 2, 2008).)

The Arbitration Agreement contains a severance provision, which states: "To the extent a court of competent jurisdiction determines any provision is not enforceable, the parties agree that the court may modify the provision to the minimum extent necessary to make the provision enforceable. Further, any such invalid provision shall not invalidate the remaining provisions, which shall remain in full force and effect." (Gerace Decl., ¶ 2; Ex. 1, p. 15 Section X.) If the Court determines any part of the Arbitration Agreement to be void or unenforceable, it should sever or modify the objectionable provision(s) to enforce the remaining provisions. Severance is also appropriate under the law and because Plaintiff agreed to it. (Gerace Decl., ¶ 2; Ex. 1, p. 15, Section X.)

## VIII. NONSIGNATORIES MAY ENFORCE ARBITRATION AGREEMENTS

Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements. (*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (3rd Cir. 1993) 7 F.3d. 1110, 1121-1122 [employee sued individually as part of an action against her employer may invoke employer's arbitration agreement with plaintiff].)

This is not a legally controversial issue. Under both federal and California law, individual defendants may invoke their employer's arbitration agreement with the plaintiff even though they are not parties to the agreement themselves. (*Letizia v. Prudential Bache Secur., Inc.* (9th Cir. 1986) 802 F.2d 1185, 1187-1188 [nonsignatories to arbitration agreement may invoke its provisions under ordinary contract and agency principles]; *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [agents and employees of signatory to arbitration agreement entitled to its protection].) As the Court of Appeals noted in *Pritzker*, this is so because corporate entities, like GRI in this case, can only act

1  through their employees: an arbitration agreement would be of little value if it did not extend to them.

2  (*Pritzker v. Merrill Lynch*, *supra,* 7 F.3d. at1122.)

3      This case resembles *Thomas v. Perry* (1988) 200 Cal.App.3d 510. There, the plaintiff sued

4  his former employer and two of its employees to recover unpaid wages. After an early appeal in the

5  case to the Supreme Court, the case was remanded for further proceedings. However, after remand,

6  it went up on appeal again before the Second Appellate District, in part, on the issue of whether the

7  individually named defendants had standing to invoke the employer-defendant's arbitration

8  agreement with plaintiff. The plaintiff in *Thomas* argued—without authority—that even if the court

9  found the arbitration agreement with his former employer valid, the individual defendants were not

10  signatories to the agreement, and for that reason, had no standing to compel arbitration under its

11  terms. (*Id.* at 516.) The Court of Appeal disagreed: "This contention is without merit under either

12  federal or state law."  (*Ibid.*)

13      The doctrine of equitable estoppel also permits claims against nonsignatories to be compelled

14  to arbitration if they are based on the same facts and are inherently inseparable from arbitrable claims

15  against signatory defendants. (See *Garcia v. Pexco, LLC* (2017) 11 Cal.5th 782, 786-787, 217

16  [employee's statutory claims against staffing agency's nonsignatory client subject to arbitration

17  because claims "intimately founded in and intertwined with the underlying contract obligations"]

18  (internal quotes and citation omitted); *Franklin v. Community Regional Med. Ctr.* (9th Cir. 2021)

19  998 F3d 867, 874-875 [employee's claims against nonsignatory hospital intertwined with

20  employment relationship with signatory staffing agency]; *Boucher v. Alliance Title Co., Inc.* (2005)

21  127 Cal.4th 262, 271-273 [nonsignatory parent company may compel arbitration on claims against

22  subsidiary].)

23      More recently, on March 11, 2024, the Ninth Circuit issued another ruling affirming

24  enforcement of arbitration agreements by nonsignatories in *Herrera v. Cathay Pacific Airways Ltd*

25  (No. 21-16083 D.C. No. 3:20-cv-03019-JCS). In enforcing the arbitration agreement, "the panel held

26  that because plaintiffs' allegations [were] intimately intertwined with [the] alleged conduct under the

27  [agreement], it was appropriate to enforce [a]rbitration." (*Id.* at 3.)

28  / / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION

At the time the events giving rise to this action took place, Messrs. Ciardelli and Athanasiou were employees of GRI. They are, therefore, entitled to compel Plaintiff to arbitrate the claims against them. They agree to compel Plaintiff to arbitrate his claims against them.

## IX. CONCLUSION

For the foregoing reasons, Defendants GRI, Ciardelli and Athanasiou request the Court order Plaintiff to arbitrate his individual claims, dismiss the class claims, and dismiss or stay the remaining proceedings.

DATED: March 25, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Tim L. Johnson*
Spencer C. Skeen
Tim L. Johnson
Andrew J. Deddeh
Attorneys for Defendants GUARANTEED RATE, INC.; VICTOR CIARDELLI and NIKOLAOS ATHANASIOU

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION