# EXHIBIT A

1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7    CHUN PING TURNG,                          Case No. 18-cv-02642-EMC
8                  Plaintiff,
                                               **ORDER GRANTING DEFENDANT'S**
9          v.                                  **MOTION TO COMPEL**
                                               **ARBITRATION**
10   GUARANTEED RATE, INC.,
                                               Docket No. 17
11                 Defendant.
12
13                          I.    **INTRODUCTION**
14          On August 8, 2018, Plaintiff filed the First Amended Complaint ("FAC").  Docket No. 16
15   ("FAC").  Defendant filed a Motion to Compel Arbitration on August 30, 2018.  Docket No. 17
16   ("Mot.").  Both parties were heard on the matter on October 25, 2018.
17                   II.    **FACTUAL & PROCEDURAL BACKGROUND**
18          This is the second motion to compel arbitration filed in this case.  Rather than respond to
19   the first motion to compel arbitration, Plaintiff filed her FAC, raising for the first time a PAGA
20   claim.  *Compare* Compl., *with* FAC.  Plaintiff has since conceded that her PAGA claim is barred
21   by the statute of limitations.  Docket No. 18 ("Opp.") at 23–24.
22          Plaintiff's claims arise under the Federal Labor Standards § 16(b); California Labor Code
23   §§ 226.7(a), 512(a), 226(a), 201-203, 221-224 *et seq*., 2699; and California Business and
24   Professions Code § 17200 *et seq.*  FAC.  Plaintiff argues that she and other class members are
25   entitled to premium wages for overtime pay based on a regular rate with commission and bonuses.
26   *Id.* ¶ 9.  Plaintiff contends that Defendant denied her, and other class members, minimum wages
27   owed to her and others based on overtime work laws, wages upon discharge, and compensation for
28   meals and rest breaks.  *Id.* Similarly, Plaintiff argues that Defendant failed to keep accurate payroll

and wage statements in accordance with California law. *Id.*

Plaintiff worked as an employee of Defendant from December 2015 to June 2016. *Id.* ¶ 14. Her role was that of a mortgage specialist in Orange County, California. *Id.* She contends that in that position she regularly worked over eight hours a day without overtime pay or compensation for rest breaks. *Id.*

After Plaintiff filed the FAC, Defendant moved to compel arbitration and to dismiss the action under Federal Rule of Civil Procedure rules 12(b)(6) and 12(b)(1). Mot. The basis for this motion is an arbitration agreement in Plaintiff's employment contract. *Id.* at 10.

Plaintiff opposes the motion to compel arbitration on several grounds. She claims that Defendant waived its right to arbitrate. She argues that the actual agreement is not valid because the express language of the agreement required a signature from the Executive Vice President, which was not satisfied. Opp. at 12. Plaintiff also contends that California law rather than Illinois law governs the contract despite a choice of law provision in the contract. *Id.* at 14–15. Defendant does not address this contention in its papers.

Plaintiff also challenges the arbitration agreement based on unconscionability. She asserts that the arbitration agreement is procedurally unconscionable because it is a contract of adhesion, and because Plaintiff did not receive a copy of the AAA rules which govern the arbitration agreement. *Id.* at 22–24.

Plaintiff further contends that the arbitration agreement is substantively unconscionable because the agreement requires her to arbitrate the types of claims an employee is most likely to bring while allowing Defendant the option to avoid arbitration for the types of claims that an employer is most likely to bring. Similarly, she takes issue with the conscionability of the choice of law provision as it requires Plaintiff to waive unwaivable claims. *Id.* at 24–29. Plaintiff also challenges, as unconscionable, a fee shifting provision and the forum selection clause. *Id.* Finally, Plaintiff asserts that the defects in the arbitration agreement cannot be severed; therefore, if the Court finds that the contract is unconscionable, she claims that the Court cannot apply the agreement's severability clause. *Id.* at 30–32.

After the hearing, Plaintiff informed the Court that there is a parallel case in Sacramento

County Superior Court (*Tadena v. Guaranteed Rate, Inc., et al*, Case No. 32-2018-00232323 (Sac. Super. Ct. 2018)).  The *Tadena* case is a class action with some overlapping claims to those in the present matter.

A.    The Contract

The relevant provisions of the arbitration agreement read:

> V. YOUR CONFIDENTIALITY OBLIGATIONS; NON-SOLICITATION
> . . .
> (d) Non-Solicitation
> . . .
>
> (i) Employees
>
> During the Restricted Period, you may not, directly or indirectly, hire, solicit, or encourage any Person employed by the Company during the last 12 months of employment with the Company or during the remainder of the Restricted Period to end their employment with the Company and/or join you as a partner, agent, employee, independent contractor or otherwise in a business venture or other business relationship.  During the Restricted Period, you may not supervise, manage, or oversee the work of any former employee of the Company, the identity of which you learned during your employment with the Company. . . .
>
> (ii) Vendors . . . .
>
> VII. MANDATORY ARBITRATION AND WAIVER OF RIGHT TO SUE AND RIGHT TO FILE ANY CLASS OR COLLECTIVE ACTION.
>
> (a) Arbitration
>
> Any and all claims (legal or equitable), demands, disputes, or controversies between you and the Company must be resolved by arbitration in accordance with the rules of the American Arbitration Association then in existence.  Such arbitration shall take place in Chicago, Illinois, the applicable law will be the laws of the State of Illinois without regard to the conflicts of law provisions therein and the decision of the arbitrator shall be final and binding on you and the Company.  Without limiting the foregoing, the following claims must be resolved by arbitration:
>
> (i) Claims related to your compensation with the Company brought under any federal, state or local statute, law, ordinance, regulation or order or the common law of any state, including without limitation claims relating to your wages, salary increases, bonuses, commissions, overtime pay, vacation pay, or severance pay whether or not such claim is based upon a legally protected right, whether statutory, contractual or common law; and

United States District Court
Northern District of California

(ii) Claims brought under any federal, state or local statute, law, ordinance, regulation or order, or the common law of any state, alleging that you were or are being subject to discrimination, retaliation, harassment, or denial of equal employment opportunity based on sex, race, color, religion, national origin, disability, age, marital status, or any other category protected by law; and/or relating to your benefits or working conditions, including without limitation, claims related to leaves of absence, Employee benefit plans, Employee health and safety, and activity protected by federal labor laws.

(b) Waiver of Right to Sue and Right to File any Action as a Class or Collective Action

With respect to any and all claims made by you, there will be no right or authority for any dispute to be brought, heard or arbitrated under this Agreement as a class or collective action, private attorney general, or in a representative capacity on behalf of any Person.

(c) Exclusions

The mandatory arbitration provisions of this agreement do not apply to: (i) any claim by you for workers compensation benefits or unemployment compensation benefits; (ii) any claim for injunctive or equitable relief, including without limitation claims related to unauthorized disclosure of confidential information, trade secrets or intellectual property; or (iii) any action brought relating to or arising out of any non-solicitation violations.

IX. ATTORNEYS' FEES AND COSTS; INJUNCTIVE RELIEF

The Company may recover from you its attorneys' fees and costs relating to any action to enforce, defend and/or prosecute this Agreement. You acknowledge that a breach of any provision of this Agreement will cause irreparable harm to the Company and that monetary damage will be inadequate and may be difficult or impossible to ascertain. Therefore, in the event of any such breach, or threatened breach, in addition to all other remedies, the Company shall have the right to require you to fulfill your obligations by way of temporary and/or permanent injunctive relief.

X. MISCELLANEOUS

. . . This agreement will be effective only after it has been fully executed by you and either the Company's President and CEO or the Executive Vice President of Strategy and Integrated Operations. . . .

To the extent a court of competent jurisdiction determines any provision is not enforceable, the parties agree that the court may modify the provision to the minimum extent necessary to make the provision enforceable. Further, any such invalid provision shall not invalidate the remaining provisions, which shall remain in full force and effect.

Docket No. 18-2 ("Plaintiff's Exhibit 1") at 13–15.

United States District Court
Northern District of California

4

### III.   DISCUSSION

A.   Legal Standard

Arbitration agreements are "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  "When considering a party's request, the court is limited to determining (1) whether a valid arbitration agreement exists, and if so (2) whether the arbitration agreement encompasses the dispute at issue."  *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1173 (N.D. Cal. 2013) (Davila, J.) (citing 9 U.S.C. §§ 2–4; *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).  If there is a valid arbitration agreement and if the agreement encompasses the disputed issue, the court lacks "discretion to deny the motion and must compel arbitration."  *Id.*  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (alteration added).

State law principles govern when making determinations regarding the validity of an arbitration agreement.  *Ambler*, 964 F. Supp. 2d at 1173–74.  The grounds for determining whether an agreement is valid are the same as any contract, meaning fraud, duress, or unconscionability.  *Id.*  "[A]ny doubts as to arbitrability must be resolved in favor of coverage and '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Id.* (quoting *AT & T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986)).  Plaintiff bears the burden of showing that an arbitration agreement should not be enforced.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, (2000).

Neither party questioned whether the Court (as opposed to an arbitrator) may determine arbitrability.

B.   Waiver of Right to Arbitrate

Plaintiff argues that Defendant has waived its right to arbitrate because in a separate case, a class action overlapping with the present matter in which Plaintiff is also a class member, Defendant has moved to settle the class action rather than seek arbitration.  In particular, plaintiff in *Tadena v. Guaranteed Rate Inc.* raises several claims that overlap with the current matter:

5

failure to indemnify (Labor Code § 2802), wage statement penalties (Labor Code § 226), wage statement penalties (Labor Code §§ 201–203), and two derivative claims under Bus. & Prof. Code §§ 17200, *et seq.* and (Labor Code §§ 2698, *et seq.*).  The proposed settlement agreement in *Tadena* "would release all of the claims alleged in *Tadena*" as well as those alleged in this matter. Docket No. 34 ("Plaintiff's Supp. Brief") at 2.

Plaintiff contends that Defendant acted inconsistently with the right to arbitrate "by invoking court proceedings in *Tadena* in an effort to obtain a binding court judgment which it can then offensively assert against an entire class of similarly situated employees, including Turng." *Id.*  She also argues that Defendant's decision to waive arbitration in *Tadena* and not inform this Court of the *Tadena* matter "highlights not only the inconsistency in positions, but also an attempt to manipulate judicial proceedings in bad faith."  *Id.* at 4.

Plaintiff argues that she has been prejudiced because "Defendant has manipulated the judicial process" in failing to inform this Court of the *Tadena* matter, failing to inform the court in the *Tadena* matter of these proceedings, and failing to inform Plaintiff and her counsel, of Defendant's "inconsistent actions by including in the *Tadena* release the claims asserted in the *Turng* action."  *Id.*  It is her view that because the court in *Tadena* has already given preliminary approval and notices have been sent out, Plaintiff must choose between opting out of the *Tadena* class and pursuing claims herein, or "abdicating the fiduciary responsibilities she owes to the putative *Turng* class (by participating in the *Tadena* settlement -- even if she participates strictly to maintain her right to object) or losing her right to object in *Tadena* if she opts-out of the *Tadena* class, thereby letting *Tadena* wipe out viable claims that have never been alleged in *Tadena* and which Turng has sworn to protect in *Turng*."  *Id.*

"The right to arbitration, like any other contract right, can be waived."  *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009).  "[W]aiver is not favored and the facts must be viewed in light of the strong federal policy supporting international arbitration agreements."  *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978) (citing *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968).  "Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of

United States District Court
Northern District of California

proof.'" *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir.1982)).  "To demonstrate waiver of the right to arbitrate, a party must show: '(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'"  *Park Place Assocs., Ltd.*, 563 F.3d at 921 (quoting *Fisher*, 791 F.2d at 694); *see Aviation Data, Inc. v. Am. Express Travel Related Servs. Co.*, 152 Cal. App. 4th 1522, 1537 (2007) ("The California rule on such a litigation waiver is in accord" with the federal rule.).  "[T]his court must be convinced not only that the appellee acted inconsistently with that arbitration right, but that the appellant was prejudiced by this action before we can find a waiver."  *Shinto Shipping Co.*, 572 F.2d at 1330 (citing *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1068 (2d Cir. 1972)).

Defendant does not argue that it did not know it could arbitrate.

### 1.    Inconsistent Actions

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate."  *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). The Ninth Circuit has "stated, however, that a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate."  *Id.* (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)) (alteration in original). The Ninth Circuit has found "this element satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Yasuda*, 829 F.3d at 1125.

Plaintiff cites to one case to support her contention that Defendant has acted inconsistently with the right to arbitrate, *St. Mary's Medical Center of Evansville, Inc. v. Disco Alumni Products Co., Inc*.  She cites this out of circuit case for the proposition that: "Submitting a case to the district court for decision is not consistent with a desire to arbitrate."  *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 589 (7th Cir. 1992).  *Disco* dealt with a defendant filing a motion to dismiss or for summary judgment and after losing that motion, filed

United States District Court
Northern District of California

1    a motion to compel arbitration. *Id.* at 587. Defendant in *Disco* acted inconsistently with the right

2    to arbitrate in the same case. However, *Disco* did not involve a party asserting waiver of the right

3    to arbitrate based on a party's actions in a separate case involving other parties.

4        Plaintiff fails to point the Court to any cases in which allegedly inconsistent conduct in a

5    separate case involving a different party can waive the right to arbitrate. *See Lemus v. CMH*

6    *Homes, Inc.*, 798 F. Supp. 2d 853, 859 (S.D. Tex. 2011) (noting Plaintiff's "unsuccessful

7    argument for waiver based on Defendants' decision to litigate rather than arbitrate in a different

8    case involving different parties."); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 (C.D.

9    Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply

10   because it did not assert that right in another case is absurd. A finding that DirecTV has waived its

11   right to arbitrate in this case because it agreed to a settlement in the *Brauer* case would amount to

12   a rule that a party to millions of arbitration agreements has no choice but to arbitrate all claims

13   arising from those agreements if even a single settlement has occurred in a case."). Moreover, in

14   *Tadena*, Defendants reserved right to arbitrate stating that "[i]n the event that the [California state

15   court] does not approve [the] Settlement Agreement, Tadena and Class Counsel agree to not

16   oppose GRI's request to arbitrate the Action on an individual basis. . . ." Docket 34-2 ("Plaintiff's

17   Exhibit 1") at 39. *Cf. Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 n.4 (7th Cir. 2003) (Even

18   if parties did not waive issue, judicial estoppel does not apply where Associates argued for

19   arbitration and class certification in one case and agreed to litigate a class action with arguably

20   similar claims in another case with different parties because, among other things, they did not

21   offer "any evidence that Associates argued in favor of litigation (and against arbitration) in that

22   lawsuit."). Thus, its position in *Tadena* was not necessarily inconsistent with the position here.

23        2.    Prejudice

24        Even if waiver could be asserted based on inconsistent actions in a different case, Plaintiff

25   fails to show prejudice necessary to establish waiver. To establish prejudice, Plaintiff "must show

26   that, *as a result of the defendants having delayed seeking arbitration*, they have incurred costs that

27   they would not otherwise have incurred, that they would be forced to relitigate an issue on the

28   merits on which they have already prevailed in court, or that the defendants have received an

United States District Court<br>Northern District of California

8

1    advantage from litigating in federal court that they would not have received in arbitration[.]"

2    *Yasuda*, 829 F.3d at 1126–27 (internal citations omitted) (emphasis added).  On the other hand,

3    prejudice does not "include costs incurred in preparing the complaint, serving notice, or engaging

4    in limited litigation regarding issues directly related to the complaint's filing, such as jurisdiction

5    or venue."  *Id.* at 1126.  Plaintiff must instead establish that "as a result of the defendants having

6    delayed seeking arbitration, they have incurred costs that they would not otherwise have incurred."

7    *Id.*  Plaintiff has not shown any prejudice flowing from Defendant's conduct in *Tadena*.

8         Plaintiff contends that she has been prejudiced in three ways: (1) "Defendant has sought to

9    invoke court proceedings in *Tadena* in an attempt to obtain class wide court judgment to block not

10   only all the claims in *Tadena* but also substantial additional claims alleged in *Turng*"; (2)

11   "Defendant has manipulated the judicial process by failing to inform this Court . . . in the *Turng*

12   *matter, and Turng* and her counsel of its inconsistent actions by including in the *Tadena* release

13   the claims asserted in the *Turng* action"; and (3) "as a proposed class representative in the *Turng*

14   case, she has a fiduciary duty to protect the class she seeks to represent" but she is presented with

15   the option of "opting out or participating in the *Tadena* class action."  Plaintiff's Supp. Brief at 4

16   (emphasis in original).

17        Plaintiff's first argument goes to the scope of the class settlement before a different court

18   and is not appropriate for this Court to resolve.  As to the third argument, the fact that Plaintiff

19   may be deprived of the opportunity to represent the class in this case because of the settlement in

20   *Tadena*, that is a result of the *Tadena* case generally, not GRI's invocation of arbitration in this

21   case.

22        With respect to Plaintiff's bad faith argument, she does not explain how the failure to

23   inform the court of Defendant's inconsistent actions prejudiced her.  Instances in which a party

24   uses a delay in seeking arbitration to its advantage would show prejudice to a party; however,

25   Plaintiff has not shown that Defendant has received an advantage in this case.  *See Christensen v.*

26   *Dewor Developments*, 33 Cal. 3d 778, 783–84 (1983).  Furthermore, while there has been a delay

27   in informing the Court of *Tadena*, Plaintiff has not suffered any burden as she has been fully heard

28   on the waiver issue.

United States District Court
Northern District of California

1      Moreover, Defendant has not delayed seeking arbitration in this matter.  The three cases

2   Plaintiff cites do not support a claim of prejudice resulting from a delay in seeking arbitration in

3   other litigation.  All involve delay within the same case.  *Cf. Yasuda*, 829 F.3d at 1127–28 (finding

4   prejudice "because the defendants failed to move for arbitration for seventeen months, the

5   plaintiffs expended considerable money and effort in federal litigation, including conferring with

6   opposing counsel regarding how to conduct the case on the merits, analyzing how to approach

7   discovery and class certification, and contesting the defendants' motion to dismiss on the merits. . .

8   . even if the parties exchanged the same information in court as they would have in arbitration, the

9   process of doing so in federal court likely cost far more than determining the answer to the same

10  question in arbitration"); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1068 (C.D. Cal.

11  2011) (Carter, J.) (finding plaintiff "would suffer prejudice if Defendant's delayed motion for

12  arbitration was granted" because plaintiff "has responded to discovery requests that exceeded the

13  scope of his arbitration agreement" and defendant waited over a year to move for arbitration);

14  *Dewor Developments*, 33 Cal. 3d at 784 (finding prejudice because "[i]n addition to the fact that

15  defendants incurred nearly $300 in court costs and over $2,000 in attorney's fees, the lengthy

16  nature of the delays associated with plaintiffs' abortive attempt at litigation has, we are told,

17  resulted in faded memories and lost records by subcontractors").  Ultimately, Plaintiff does not

18  explain how the failure of Defendant to seek arbitration in *Tadena* prejudiced her opposition to

19  arbitration in *this* case.

20  C.    Valid Signature

21      Plaintiff challenges the existence of a contract containing the arbitration clause on the

22  grounds that (1) the copy of the contract with the arbitration agreement she provided to the court

23  does not include any signature from a representative of Defendant, and (2) Defendant's copy of

24  the agreement has a signature from Nikolaos Anthansiou "who, at the time of signing, held neither

25  the CEO position nor the Executive Vice President of Strategy and Integrated Operation position",

26  which the agreement explicitly required.  Opp. at 3.  The employment contract does states that in

27  order for the contract to be effective, it must have the signature of the CEO/President or the

28

United States District Court
Northern District of California

1    Executive Vice President of Strategy and Integrated Operations.  Plaintiff's Exhibit 1 at 15.[1]

2         Defendant contends that even though Mr. Anthansiou held the new title of Chief

3    Operations Officer when he signed the contract, he was never divested of his previous role as

4    Executive Vice President.  Docket No. 19 ("Reply") at 6–7.  Thus, despite Mr. Anthansiou's new

5    title, he still had the authority to sign the employment contract.  *Id.*  Plaintiff has presented no

6    evidence to the contrary.  Hence, the Court finds Mr. Anthansiou had authority to sign under the

7    terms of the Agreement.

8         As to Plaintiff's assertion the contract was not signed at all, Defendant has produced a

9    signed copy.  Plaintiff has not produced any persuasive evidence to cast doubt on the authenticity

10   of that document.  Plaintiff's copy of an unsigned copy does not negate the existence of a signed

11   copy.  Plaintiff produced no evidence of, *e.g.*, fraud.

12        In any event, California Civil Code section 3388 states "[a] party who has signed a written

13   contract may be compelled specifically to perform it, though the other party has not signed it, if

14   the latter has performed, or offers to perform it on his part, and the case is otherwise proper for

15   enforcing specific performance."  Cal. Civ. Code § 3388 (West).

16            Just as with any written agreement signed by one party, an
              arbitration agreement can be specifically enforced against the
17            signing party regardless of whether the party seeking enforcement
              has also signed, provided that the party seeking enforcement has
18            performed or offered to do so.  [In this case, the party seeking to
              avoid arbitration] does not, and cannot, dispute that [the party
19            seeking to enforce the arbitration agreement] has at all times
              performed all the duties required of it under the arbitration
20            agreement.  In this case, [the party seeking to enforce the arbitration
              agreement] has carried its burden in proving the arbitration
21            agreement is a mutually binding agreement.

22   *Serafin v. Balco Properties Ltd.*, LLC, 235 Cal. App. 4th 165, 177 (2015).  Similarly, in *Ambler v.*

23   *BT Americas Inc.*, a court found that plaintiff was bound by a contract where plaintiff signed the

24   contract, but defendant did not; defendant had nevertheless accepted plaintiff's work for many

25

26   ───────────────

27   [1] Plaintiff's unopposed request for judicial notice of the LinkedIn profile of Nikolaos Anthansiou
     is granted. Docket No. 18-1 at 1-2.  *See McBain v. Behr Paint Corp.*, No. 16-CV-07036-MEJ,
     2017 WL 1208074, at *3 (N.D. Cal. Apr. 3, 2017) (granting a request to judicially notice a
28   LinkedIn account).  Defendant does not dispute that Anthansiou's title was COO, but it argues that
     he was never divested of his other duties.

United States District Court
Northern District of California

1    years.  *Ambler*, 964 F. Supp. 2d at 1174.  The court reasoned that if defendant attempted to

2    invalidate the contract based on its lack of signature, defendant would have been estopped from

3    doing so.  *Id.*  Therefore, the obligation was mutual: plaintiff could not get out of the contract

4    because of the absence of defendant's signature.  *Id.*

5            Here, Plaintiff does not argue that she and the Company did not perform under the

6    contract.  Thus, California Civil Code section 3388 which has been applied in the context of an

7    employment arbitration agreement, governs even if Mr. Anthansiou had not signed.  *Serafin*, 235

8    Cal. App. 4th at 177.

9            Accordingly, an enforceable contract exists.

10   D.      Choice of Law

11           Plaintiff challenges the choice of law provision both as it is applied in this case and facially

12   as unconscionable.  As applied here, she contends that California law governs this matter despite

13   the existence of a choice of law provision in the contract requiring Illinois law to apply.  Opp. at

14   14–21.

15           "As a threshold matter" when deciding whether a choice of law provision applies, "a court

16   must determine whether the chosen state has a substantial relationship to the parties or their

17   transaction, or . . . whether there is any other reasonable basis for the parties' choice of law."

18   *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) (internal quotation marks

19   omitted).  If there is a substantial relationship, the court must evaluate if "the chosen state's law is

20   contrary to a fundamental policy of California."  *Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d

21   924, 930 (N.D. Cal. 2012) (Gonzalez Rogers, J.) (citing *Peleg v. Neiman Marcus Group, Inc.*, 204

22   Cal. App. 4th 1425, 1446 (2012)).  Finally, should the court find "a conflict between the laws, the

23   court must then determine whether the chosen state has a materially greater interest than

24   California."  *Id.*  "If California has a materially greater interest than the chosen state, the choice of

25   law shall not be enforced, for the obvious reason that in such circumstances [California courts]

26   will decline to enforce a law contrary to [California's] fundamental policy."  *Nedlloyd Lines B.V.*

27   *v. Superior Court*, 3 Cal.4th 459, 466 (1992) (alteration added).

28           Defendant makes no attempt to show that Illinois law, rather than California law, should

United States District Court
Northern District of California

govern.  Plaintiff contends that Illinois labor code is contrary to a fundamental California policy (meaning the labor code provisions at issue here); therefore, this Court must apply California law.  Opp. at 18–19.  Defendant does not provide a challenge to Plaintiff's assertion that California law applies, but instead argues that the arbitration agreement applies under Illinois or California law.

As Defendant does not challenge Plaintiff's assertion that California substantive law should apply here, the Court will apply California law.

E.    Unconscionability

Arbitration clauses can be invalidated based "upon such grounds as exist at law or in equity for the revocation of any contract" such as unconscionability.  9 U.S.C. § 2.  Under California law, for a party to claim a contract is unconscionable, it must show that it is both procedurally and substantively unconscionable.  *Dalton v. J. Mann Inc.*, No. 16-CV-03409-EMC, 2016 WL 5909710, at *3 (N.D. Cal. Oct. 11, 2016).  "A sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Serafin*, LLC, 235 Cal. App. 4th at 178.  A court when evaluating procedural aspects of unconscionability focuses on oppression or surprise that results from unequal bargaining power, and while determining substantive unconscionability a court is more concerned with overly harsh or one-sided results.  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).

1.    Procedural Unconscionability

Procedural unconscionability refers to unequal bargaining power resulting from no real negotiation and the absence of a meaningful choice.  *Dean Witter Reynolds, Inc. v. Superior Court,* 211 Cal. App. 3d 758, 767–68 (Ct. App. 1989), *reh'g denied and opinion modified* (July 21, 1989).

a.    Defendant's Failure to Provide AAA Rules

Plaintiff argues that because Defendant did not provide Plaintiff with a copy of the AAA rules, nor was she told where to find a copy of the rules, the arbitration agreement is procedurally unconscionable.  Opp. at 23.  A failure to provide AAA rules that govern an arbitration agreement can sometimes amount to procedural unconscionability where the challenge to conscionability

"concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016).

Courts have also found that when AAA rules are incorporated by reference, courts may "more closely scrutinize the substantive unconscionability of terms appearing only in the [AAA] rules"; however, incorporation alone does not amount to oppression. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (quoting *Baltazar*, 62 Cal. 4th at 1246) (alteration added).

In the case at bar, Plaintiff does not contend that any aspect of the AAA rules surprised her, nor does she challenge any AAA rule. Moreover, the AAA rules referenced in the arbitration agreement are readily available to the public. *Ulbrich*, 887 F. Supp. 2d at 932–33 (recognizing that "[u]nder general California rules of contract interpretation, matters like the AAA rules can be incorporated into a contract by reference provided the incorporation is clear and the incorporated rules are readily available"). Hence, the failure to provide Plaintiff with a copy of the AAA rules does not amount to any procedural unconscionability.

### b. Contract of Adhesion

Plaintiff challenges the arbitration agreement as unconscionable as it was a contract of adhesion. Opp. at 22–24. Here, the contract does appear to be "a standardized contract that is imposed and drafted by the party of superior bargaining strength and relegates to the other party only the opportunity to adhere to the contract or reject it." *Dalton.*, No. 16-CV-03409-EMC, 2016 WL 5909710, at *3 (quoting *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1248 (2006)). As here, *Dalton* involved an employment contract. "California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." *Poublon*, 846 F.3d at 1260 (citing *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348, *as modified on denial of reh'g* (Feb. 9, 2015)).

In this case, there was no right to opt out of arbitration. Docket No. 18-2 ("Turng Decl.") at 2. In Plaintiff's declaration she indicated that she was not given an "opportunity to negotiate any of the terms in the Compensation Agreement" and she was instructed by a person in the

United States District Court
Northern District of California

1    Human Resources department at GRI "to immediately sign the documents" if she hoped to be

2    employed by GRI or she "would forego [the] employment opportunity." *Id.*

3         Defendant does not dispute that the agreement was a contract of adhesion. Instead, it

4    argues that Plaintiff has not shown that she did not have meaningful alternatives for employment.

5    It cites *Dean Witter Reynolds v. Superior Court* for the proposition that Plaintiff must show a lack

6    of meaningful alternatives in order to establish procedural unconscionability. *Id.* However, *Dean*

7    *Witter* involved opening an IRA with a bank; it did not involve an employment contract. *Dean*

8    *Witter Reynolds, Inc.*, 211 Cal. App. 3d at 761. The plaintiff in *Dean Witter Reynolds, Inc.* could

9    not show a lack of meaningful choice because there were many banking institutions that he could

10   have used. *Id.* at 764.

11        Under California law, access to employment is treated differently. In *Armendariz v.*

12   *Found. Health Psychcare Servs.*, Inc., 24 Cal. 4th 83, 115 (2000), the California Supreme Court

13   recognized that "few employees are in a position to refuse a job because of an arbitration

14   requirement," and thus an employment contract of adhesion is procedurally unconscionable.

15        Defendant contends that "[u]nder *Concepcion*, *Iskanian*, and *Sonic II*, the

16   unconscionability doctrine established in *Armendariz*, 24 Cal. 4th at 114-15 provides no valid

17   basis for refusing to enforce an arbitration agreement." Mot. at 8. It argues that "*Armendariz*

18   developed rules not generally applicable to all contracts, but instead only apply to employment

19   arbitration agreements." *Id.* Defendant characterizes *Armendariz* as the court dispensing with

20   "the requirement the complaining party lack a meaningful choice, and replaced it with a

21   presumption employees had no meaningful alternatives to sign a preemployment arbitration

22   contract." Reply at 4 (citing *Armendariz*, 24 Cal. 4th at 115).

23        It is true that *Armendariz* found that "[g]iven the lack of choice and the potential

24   disadvantages that even a fair arbitration system can harbor for employees, we must be

25   particularly attuned to claims that employers with superior bargaining power have imposed one-

26   sided, substantively unconscionable terms as part of an arbitration agreement." *Armendariz*, 24

27   Cal. 4th at 115. This language is arguably in tension with the proposition that a court "may not

28   'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that

United States District Court
Northern District of California

1    enforcement would be unconscionable, for this would enable the court to effect what . . . the state

2    legislature cannot.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (quoting

3    *Perry v. Thomas*, 482 U.S. 483, 493 (1987)). But the broader reading of *Armendariz* concerns the

4    imposition of any one-sided unconscionable terms in an employment contract. *Armendariz*'s

5    recognition of differential bargaining power between employers and employees is not unique to an

6    agreement to arbitrate. The proposition that adhesive contracts in the employment context

7    generally entails some degree of procedural unconscionability still obtains in both the California

8    Supreme Court and the Ninth Circuit subsequent to *Concepcion*. *See Poublon*, 846 F.3d at 1260;

9    *Ramos v. Superior Court of San Francisco Cty.*, 28 Cal. App. 5th 1042 (Cal. Ct. App. 2018)

10   (citing *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 962–963 (2017); *Sanchez v. Valencia Holding Co.*,

11   *LLC*, 61 Cal.4th 899, 910 (2015); *Sonic-Calabasas A, Inc.*, 57 Cal.4th at 1169 for the proposition

12   that "[s]ince Concepcion was decided, the California Supreme Court has reaffirmed the validity of

13   *Armendariz* multiple times").

14        Employment cases cited by Defendant do not hold to the contrary. The courts in those

15   cases found some, albeit a very low amount of, procedural unconscionability. *See Serpa v.*

16   *California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013), *as modified* (Apr. 19,

17   2013), *as modified* (Apr. 26, 2013) ("It is well settled that adhesion contracts in the employment

18   context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically

19   contain some aspects of procedural unconscionability."); *Ortiz v. Volt Mgmt. Corp*, No. 16-CV-

20   07096-YGR, 2017 WL 1957072, at *3 (N.D. Cal. May 11, 2017) (Gonzalez Rogers, J.)

21   (recognizing that adhesive contracts in the employment context contain some degree of procedural

22   unconscionability); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1172–73 (S.D. Cal. 2011)

23   (Hayes, J.) (holding that in light of the Supreme Court's decision, *Concepcion*, it did "not find that

24   the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability",

25   but nevertheless finding "that the arbitration agreement contains elements of procedural

26   unconscionability, although the evidence of procedural unconscionability is not strong, in light of

27   *Concepcion*").

28        Although there is some procedural unconscionability here, "[w]here there is no other

16

1   indication of oppression or surprise, the degree of procedural unconscionability of an adhesion

2   agreement is low, and the agreement will be enforceable unless the degree of substantive

3   unconscionability is high."  *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771 (2012).  Plaintiff

4   in the instant case needs to show a high degree of substantive unconscionability to invalidate the

5   arbitration provision.

6           2.      Substantive Unconscionability

7           Substantive unconscionability exists where the contract is overly harsh or is unduly one-

8   sided results.  *Moreno*, 57 Cal. 4th at 1133.  Plaintiff argues that the arbitration agreement is

9   substantively unconscionable because it lacks mutuality, requires Plaintiff to waive unwaivable

10  claims, requires employees to bear a part of the cost of arbitration which is not allowed under

11  California law, and requires Plaintiff to apply Illinois law and arbitrate in Chicago, Illinois.

12                  a.      Mutuality

13          The California Supreme Court found in *Armendariz* that given the basic and substantial

14  nature of the rights at issue in requiring arbitration, the unilateral obligation to arbitrate may be so

15  unfairly one-sided as to warrant a finding of substantive unconscionability.  *Armendariz*, Inc., 24

16  Cal. 4th at 117.  The *Armendariz* Court found that "it is unfairly one-sided for an employer with

17  superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such

18  limitations when it seeks to prosecute a claim against the employee, without at least some

19  reasonable justification for such one-sidedness based on 'business realities.'"  *Armendariz,* 24 Cal.

20  4th at 117.  The phrase "business realities" refers to legitimate commercial need.  *Id.*  "But an

21  arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it

22  requires one contracting party, but not the other, to arbitrate all claims arising out of the same

23  transaction or occurrence or series of transactions or occurrences."  *Id.* at 120 (finding

24  unconscionability in part because "[a]n employee terminated for stealing trade secrets, for

25  example, must arbitrate his or her wrongful termination claim under the agreement while the

26  employer has no corresponding obligation to arbitrate its trade secrets claim against the

27  employee").  Further, for a Defendant to employ the "business realities" justifying a one-sided

28  arbitration agreement, those "'business realities' creating the special, need must be explained in

United States District Court
Northern District of California

17

1    the terms of the contract or factually established."   *Fitz*, 118 Cal. App. 4th at 723 (citing

2    *Armendariz,* 24 Cal. 4th at 117, quoting *Stirlen,* 51 Cal. App. 4th at 1536).

3            As the Ninth Circuit noted in *Tompkins v. 23andMe*, 840 F.3d 1016, 1030 (9th Cir. 2016),

4    the California Supreme Court has clarified the scope of *Armendariz*, making clear that no

5    assumption can be made that arbitration is an inferior forum to courts.  *See also Sonic-Calabasas*

6    *A, Inc.*, 57 Cal. 4th at 1125 ("Although a court may not refuse to enforce an arbitration agreement

7    imposed on an employee as a condition of employment simply because it requires the employee to

8    bypass a Berman hearing, such an agreement may be unconscionable if it is otherwise

9    unreasonably one-sided in favor of the employer.").  *Tompkins* also pointed to California cases

10   holding that a one-sided contract is not necessarily unconscionable.  *Tompkins*, 840 F.3d at 1031

11   (citing *Baltazar*, 62 Cal. 4th at 1250).  For instance, *Sanchez v. Valencia Holdings Co., LLC*, 61

12   Cal.4th 899 (2015) held that a one-sided provision which provided for additional review of arbitral

13   grants of injunctive relief benefitting sellers of cars was not unconscionable because "the extra

14   margin of safety" provided was justified given the broad impact injunctive relief would have on

15   the car sellers' business.  *Id.* at 917.  In *Baltazar*, the court upheld a provision excepting

16   preliminary injunctive relief likely to be used by employers, not employees, because that provision

17   reiterated rights already existent under California Code of Civil Procedure § 1281.8.  *Baltazar*,

18   Inc., 62 Cal. 4th 1247–48.

19           On the other hand, one-sided rights substantially benefitting one party over the other has

20   been held in some circumstances to be unconscionable.  For instance, in *Farrar* the court found

21   unconscionable the agreement contained a "wholesale exception" to arbitration which exempted

22   "any claim based on or related to the and Assignment of Inventions & Confidentiality Agreement

23   between you and Direct Commerce," *Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257,

24   1273 (Ct. App. 2017), review denied (June 14, 2017).  The exception for "any claim" extended

25   beyond the *provisional* judicial remedies exempted from arbitration in *Baltazar*; the broad

26   exception for all injunctions in *Farrar* was therefore distinguishable from the limited exception in

27   *Baltazar*.  Other courts have similarly found that provisions which carve out from arbitration

28   claims for permanent (not just preliminary) injunctive relief are substantively unsconscionable.

United States District Court
Northern District of California

*Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 250 (2016); *see also Martin v. Ricoh Americas Corp.*, No. C-08-4853 EMC, 2009 WL 1578716, at *4 (N.D. Cal. June 4, 2009) (citing cases).

In the case at bar, exemptions from arbitration are provided in section (c) Part VII of the Agreement:

> The mandatory arbitration provisions of this agreement do not apply to: (i) any claim by you for workers compensation benefits or unemployment compensation benefits; (ii) **any claim for injunctive or equitable relief,** *including without limitation* **claims related to unauthorized disclosure of confidential information, trade secrets or intellectual property; or** (iii) **any action brought relating to or arising out of any non-solicitation violations**.

*Id.* at 14 (emphasis added).

As in *Farrar*, Part VII(c) carves out a wholesale exemption of claims for injunctive or equitable relief (beyond provisional relief) likely to benefit employers (who may seek, *e.g.*, to enforce confidentiality requirements set forth in Section V of the agreement) more than employees.  The one-sided nature is heightened by Section VII(c)(iii) which allows employers to sue in court for damages as well as injunctive relief for non-solicitation violations – obligations imposed only on employees and not the company.  The holding in *Farrar* that such one-sided "wholesale exceptions" are unconscionable is consistent with prior case law which scrutinize the practical impact of such provisions.

In *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004), the court held an agreement can be unfairly one-sided if claims more likely to be brought by the weaker party are forced into arbitration, while claims likely to be brought by the party with greater bargaining power are not required to be arbitrated.  *See Fitz*, 118 Cal. App. 4th at 724 (explaining that courts have found a lack of mutuality where "an employee terminated for stealing trade secrets would have to arbitrate his wrongful termination claim but the employer could avoid arbitration by simply requesting injunctive or declaratory relief").  *Fitz* held that the arbitration agreement "is unfairly one-sided because it compels arbitration of the claims more likely to be brought by Fitz, the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by NCR, the stronger party."  *Id.*  Other courts are in accord.  *See Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 844 (N.D. Cal. 2012) (James, J.) ("Accordingly, because the Arbitration Agreement allows

the parties access to the courts only for injunctive relief, and this form of relief favors employers, the Court finds that this provision is substantively unconscionable."); *Colvin v. NASDAQ OMX Grp., Inc.*, No. 15-CV-02078-EMC, 2015 WL 6735292, at *5 (N.D. Cal. Nov. 4, 2015) (finding an arbitration provision unconscionable where the exception "creates a lack of mutuality wherein the Defendant can force employee claims to arbitration while reserving the judicial forum for claims that Defendant is more likely to bring against its employees."); *Bermudez v. PrimeLending*, No. LACV1200987JAKEX, 2012 WL 12893080, at *13 (C.D. Cal. Aug. 14, 2012) (finding that a provision providing for an exception that is "not limited to injunctive relief" unconscionable).

Defendant attempts to provide a "business reality" justification for the carve outs. It contends that "GRI has legitimate interests in protecting its intellectual property, trade secrets, and other confidential elements of their business." Reply at 8 n.4. But Defendant fails sufficiently to articulate a business reality justification. The arbitration agreement in a conclusory manner identifies a purported justification for breach of the non-solicitation clause stating that a breach will cause immediate irreparable injury. No other explanation is provided. And the agreement does not identify a business justification for injunctive relief not involving solicitation. Nor has Defendant factually established any such broader justification.

Accordingly, the non-mutuality of Part VII(c)(ii) and (iii) are substantively unconscionable.[2]

        b.    <u>Fee Shifting Provision</u>

Plaintiff challenges as unconscionable a fee shifting provision because it subverts language in the Labor Code related to a requirement that an employer show bad faith on the part of a

---

[2] The Court grants the unopposed request for judicial notice of the *Tadena* state court transcript. Docket No. 36. *See King v. Safeway, Inc.*, No. C-08-0999 MMC, 2008 WL 1808545, at *1 (N.D. Cal. Apr. 22, 2008) (granting a request for judicial notice of a court transcript.)

As to Plaintiff's argument, she asserts that Defendant claimed in *Tadena* that injunctive relief is not carved out as an exception because the agreement also states that any claims legal and equitable must be arbitrated. Regardless of Defendant's arguments in another matter, the principle that the specific (here the exceptions to arbitration), governs the general (the initial provision stating that all claims legal and equitable must be arbitrated) is still applicable. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("it is a commonplace of statutory construction that the specific governs the general"). The Court does not agree with Defendant's argument in the separate *Tadena* matter.

United States District Court
Northern District of California

1    plaintiff to receive attorneys' fees.  Defendant argues that the fee shifting provision does not even

2    apply.  The provision reads:

> The Company may recover from you its attorneys' fees and costs
> relating to any action to enforce, defend, and/or prosecute this
> Agreement.  You acknowledge that a breach of any provision of this
> Agreement will cause irreparable harm to the Company and that
> monetary damages will be inadequate and may be difficult or
> impossible to ascertain.  Therefore, in the event of any such breach,
> or threatened breach, in addition to all other remedies, the Company
> shall have the right to require you to fulfill your obligations by way
> of temporary and/or permanent injunctive relief.

8    Plaintiff's Exhibit 1 at 14.  Defendant contends that the claims raised here arise under the Labor

9    Code and are not claims to "enforce, defend, and/or prosecute" the Agreement.  In the hearing

10   held on October 26, 2018, Defendant conceded that it would not be able to seek attorneys' fees in

11   the present dispute.

12        It is true that Plaintiff does not claim breach of contract; rather Plaintiff's claims arise from

13   the Labor Code.  While an argument could be made that the present dispute (at least the motion at

14   bar) involves "enforcing" the arbitration agreement, no party has so contended, and the Court must

15   interpret the ambiguous language above in a manner that renders the contract lawful and

16   enforceable.  *Ajamian*, 203 Cal. App. 4th at 801 ("As a general proposition (where the clear and

17   unmistakable test does not apply), we agree that ambiguous terms should be construed, where

18   reasonable, in favor of arbitration."); *Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th

19   665, 682 (2010) ("When an arbitration provision is ambiguous, we will interpret that provision, if

20   reasonable, in a manner that renders it lawful, both because of our public policy in favor of

21   arbitration as a speedy and relatively inexpensive means of dispute resolution, and because of the

22   general principle that we interpret a contractual provision in a manner that renders it enforceable

23   rather than void.").

24        A reasonable interpretation of the language above is that the fee shifting provision does not

25   apply to this matter as the cause of action arises under the Labor Code not a dispute over the

26   contract itself.  Therefore, Defendant's concession that it cannot seek fees herein is consistent with

27   the Agreement and the Agreement will be so interpreted.  The provision is not unconscionable.

28

United States District Court
Northern District of California

c.     Choice of Law

Plaintiff challenges the choice of law provision in the arbitration agreement as, not only inapplicable in this matter, but also as unconscionable.  Opp. at 17–20.  The provision states that "[s]uch arbitration shall take place in Chicago, Illinois, the applicable law will be the laws of the State of Illinois without regard to the conflicts of law provisions therein and the decision of the arbitrator shall be final and binding on you and the Company."  Plaintiff's Exhibit 1 at 14.

Despite Defendant's failure to argue that Illinois law applies, the Court must still evaluate whether the choice of law provision would be substantively unconscionable at the time it went into effect.  "[U]nconscionability is evaluated at the time the contract went into effect and not how it may be applied in the future."  *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 960 (N.D. Cal. 2015) (Laporte, J.).  Plaintiff argues that the choice of law provision applicable here would prevent her from bringing certain California state law claims that do not have an Illinois law counterpart. Opp. at 17–18.  For this reason, she contends that the choice of law provision requires her waive certain "unwaivable" claims.  *Id.*

Defendant cites to *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001) and to *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992) for the proposition: "The proper inquiry when analyzing a choice-of-law provision is merely whether the provision, alone, is enforceable and which law should apply."  Reply at 13.  However, neither of these courts faced the question of whether a choice of law provision was unconscionable. Furthermore, rather than argue that the choice of law provision is not unconscionable, Defendant asserts that courts simply ignore the choice of law provision if it is not valid rather than invalidate the contract.  Nonetheless, presented with a challenge on unconscionability, the Court must examine the choice of law clause.

In *Pinela v. Neiman Marcus Group, Inc.*, the California Court of Appeal found that it was substantively unconscionable to have a Texas choice of law provision because under Texas law a plaintiff could not bring a private right of enforcement under Labor Code provisions at issue. *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 251 (2015).  Under California law a plaintiff would have been able to bring those claims.  *Id.*  The choice of law provision barring that

United States District Court
Northern District of California

1    right was unconscionable.  *Id.*

2    　　　Defendant argues that *Pinela* was wrongly decided because courts cannot rely on the

3    uniqueness of arbitration when invalidating a contract.  However, the problem with the choice of

4    law provision is not peculiar to arbitration.  It is problematic even if applied to a lawsuit in court.

5    *Pinela* continues to be good law and applies.  The choice of law provision has a high degree of

6    substantive unconscionability.

7    　　　　　　　　d.　　Requirement to Arbitrate in Illinois

8    　　　Plaintiff challenges the requirement to arbitrate in Chicago, Illinois.  "[T]he California

9    Supreme Court has stated that California courts must enforce a forum selection clause unless the

10   clause is unreasonable because 'the forum selected would be unavailable or unable to accomplish

11   substantial justice'; inconvenience and expense of the forum alone is not sufficient."  *Poublon*,

12   846 F.3d at 1264–65 (quoting *Tompkins*, 840 F.3d at 1027).  A distant forum is not necessarily

13   "unavailable or unable to accomplish substantial justice."  *Id.* at 1265 (quoting *Tompkins*, 840

14   F.3d at 1027).  "California appellate courts considering forum selection clauses in adhesion

15   contracts have held that '[n]either inconvenience nor additional expense in litigating in the

16   selected forum is part of the test of unreasonability.'"  *Tompkins*, 840 F.3d at 1028 (quoting *Cal–*

17   *State Bus. Prods. & Servs., Inc. v. Ricoh*, 12 Cal.App.4th 1666 (Cal. Ct. App. 1993)) (alterations

18   in original).  However, if the forum is "so gravely difficult and inconvenient that [the plaintiffs]

19   will for all practical purposes be deprived of [their] day in court", it is unenforceable.  *Id.* at 1029

20   (alteration in original).  Plaintiff has not set forth any facts establishing that arbitrating in Chicago

21   is so difficult that she would essentially be denied her day in court.  Moreover, Chicago has a

22   nexus to this case; it is where Defendant's headquarters is located.  *Cf. Tompkins*, 840 F.3d at

23   1029.  For these reasons, Plaintiff has failed to set forth facts establishing the forum selection

24   clause is unconscionable.

25   　　　　　　　　e.　　Conclusion

26   　　　As explained above, Plaintiff has established a modest degree of procedural

27   unconscionability.  Plaintiff has established a high degree of substantive unconscionability as it

28   relates to the choice of law provision and the lack of mutuality pertaining to exceptions from

United States District Court
Northern District of California

1    arbitration.

2    F.    Severability

3         The agreement at issue here has a severability clause.  The arbitration agreement reads:

4         To the extent a court of competent jurisdiction determines any
          provision is not enforceable, the parties agree that the court may
5         modify the provision to the minimum extent necessary to make the
          provision enforceable.  Further, any such invalid provision shall not
6         invalidate the remaining provisions, which shall remain in full force
          and effect.

7

8    Docket No. 18-2 at 15.  "It is the law that where no strong objections of public policy are

9    present, a party to an illegal contract may be permitted to enforce it."  *Nevcal Enterprises, Inc. v.*

10   *Cal-Neva Lodge, Inc.*, 217 Cal. App. 2d 799, 806 (Ct. App. 1963).  "The presumption in favor of

11   applying the law that tends to validate a contract is important where the alternative is no contract

12   at all."  *Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 88 (2d Cir. 2007).

13   Severability "clauses evidence the parties' intent that, to the extent possible, the valid provisions

14   of the contracts be given effect, even if some provision is found to be invalid or unlawful."  *Baeza*

15   *v. Superior Court*, 201 Cal. App. 4th 1214 (Ct. App. 2011).  "The presence of a severability clause

16   makes severance more feasible."  *Smith v. Vmware, Inc.*, No. 15-CV-03750-TEH, 2016 WL

17   54120, at *6 (N.D. Cal. Jan. 5, 2016); *Grabowski*, 817 F. Supp. 2d at 1179) (severing

18   unconscionable provisions in part because the agreement had a severability clause).

19        Here, there are no strong public policy reasons barring the enforcement of the severability

20   clause in the instant case.  Indeed, its enforcement comports with common law principles

21   governing severance.

22        "[A] court should sever an unconscionable provision unless the agreement is so

23   'permeated' by unconscionability that it cannot be cured by severance."  *Serafin*, LLC, 235 Cal.

24   App. 4th at 183–84.  The California Supreme Court has recognized that multiple unconscionable

25   provisions "indicate a systematic effort to impose arbitration on an employee."  *Armendariz*, 24

26   Cal. 4th at 124.  However, "the Court did not hold that any time there is more than one

27   unconscionable provision, severance is not possible."  *Burgoon v. Narconon of N. California*, 125

28   F. Supp. 3d 974, 990 (N.D. Cal. 2015) (Chen, J.) (discussing *Armendariz*).  *See, e.g., Bermudez*,

United States District Court
Northern District of California

1   No. LACV1200987JAKEX, 2012 WL 12893080, at *14 (severing four provisions including a

2   bilateral shifting of attorneys' fees and a unilateral exclusion from arbitration for a defendant's

3   claims); *Colvin*, No. 15-CV-02078-EMC, 2015 WL 6735292, at *9 (severing multiple

4   unconscionable provisions).  A court may refuse to sever illegal provisions where the "central

5   purpose of the contract is tainted with illegality" or if "there is no single provision a court can

6   strike or restrict in order to remove the unconscionable taint from the agreement."  *Poublon*, 846

7   F.3d at 1273 (quoting *Ontiveros*, 164 Cal. App. 4th at 515).  "[T]he dispositive question is whether

8   'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the

9   contract to enforce."  *Id.* (quoting *Marathon Entm't, Inc. v. Blasi,* 42 Cal. 4th 974, 996 (2008)).

10        In contrast, "[w]here parts of an arbitration provision are unconscionable, the arbitration

11   provision can be saved when the unconscionable portion 'represent[s] only a part of [the]

12   agreement and can be severed without disturbing the primary intent of the parties to arbitrate their

13   disputes.'"  *Openshaw v. FedEx Ground Package Sys.*, Inc., 731 F. Supp. 2d 987, 998 (C.D. Cal.

14   2010) (Carney, J.) (quoting *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 215 (3d Cir. 2003))

15   (alteration in original).  Severance is appropriate where "the illegality is collateral to the main

16   purpose of the contract, and the illegal provision can be extirpated from the contract by means of

17   severance or restriction."  *Armendariz*, 24 Cal. 4th at 124.

18        In this case, the exceptions for the injunctive relief and GRI's ability to seek judicial

19   remedies for violations of the non-solicitation clause do not "permeate[ ] the arbitration

20   agreements to such an extent that the purpose of the agreements—i.e., to arbitrate rather than

21   litigate—was transformed—i.e., to impose arbitration 'not simply as an alternative to litigation,

22   but as an inferior forum.'"  *Burgoon*, 125 F. Supp. 3d at 990 (quoting *Armendariz*, 24 Cal.4th at

23   124); *see Grabowski*, 817 F. Supp. 2d at 1179 (severing "three substantively unconscionable

24   provisions (the 'carve out' provision stating that the Dispute Resolution Agreement does not apply

25   to 'any claims by the Company that includes a request for injunctive or equitable relief'; the

26   confidentiality provision; and the attorney's fees provision)" because of federal policy favoring

27   arbitration); *Pope v. Sonatype, Inc.*, No. 5:15–cv–00956–RMW, 2015 WL 2174033, at*7, 2015

28   U.S. Dist. LEXIS 60815, at *16–17 (N.D. Cal. May 8, 2015) (also severing three unconscionable

United States District Court
Northern District of California

1  provisions—"(1) [the] trade secret misappropriation injunctive relief carve-out, (2) the

2  requirement that arbitration take place in Washington, D.C., and (3) the requirement that Pope pay

3  attorney's fees unless he is a prevailing party").  And in view of the severability clause, the

4  unconscionable carve-outs can be severed "without disturbing the primary intent of the parties to

5  arbitrate their dispute."  *Openshaw*, 731 F. Supp. 2d at 998.  The objectionable provisions may be

6  severed without re-writing the agreement.

7       Hence, the choice of law provision and the two exceptions to arbitration for injunctive

8  relief and enforcement of the non-solicitation clause may be severed from the agreement.

9                          **IV.    CONCLUSION**

10      For the reasons stated herein, Defendant's motion to compel arbitration is **GRANTED**.

11  The choice of law provision and Sections VII(c)(ii) and (iii) are unconscionable and are severed

12  from the agreement.

13      This order disposes of Docket No. 17.

14

15      **IT IS SO ORDERED**.

16

17  Dated: 1/17/2019

18

19                                          _____

20                                          EDWARD M. CHEN
                                            United States District Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California