UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PETERS,<br>Plaintiff,<br>v.<br>GUARANTEED RATE, INC., et al.,<br>Defendants. | Case No. 23-cv-05602-VC<br><br>**ORDER DENYING MOTION TO COMPEL OPT-IN PLAINTIFFS SUBJECT TO ARBITRATION AGREEMENT VERSION 1 TO INDIVIDUAL ARBITRATION**<br><br>Re: Dkt. No. 158 |

The arbitration agreement at issue here (Version 1) shares several unconscionable elements with a later version of the agreement (Version 2), which has already been invalidated. *Peters v. Guaranteed Rate, Inc.*, 2024 WL 2925309, at *1 (N.D. Cal. June 10, 2024), *aff'd*, 2025 WL 1904424 (9th Cir. July 10, 2025). For similar reasons, Version 1 is invalid and Guaranteed Rate's motion to compel arbitration is denied. This ruling assumes the reader is familiar with the applicable legal standards and the arguments and evidence presented by the parties.

**Delegation.** Guaranteed Rate asserts in its reply that arbitrability needs to be decided by an arbitrator because Version 1 incorporates the rules of the American Arbitration Association then in existence, and those rules in turn delegate arbitration to the arbitrator. Because this argument was not raised in the motion to compel, it is forfeited. In any event, the delegation of threshold issues is not clear and unmistakable here. As an initial matter, it is an open question whether incorporation of AAA rules constitutes clear and unmistakable evidence of delegation where the plaintiffs are not sophisticated. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024). Moreover, delegation isn't clear because of the contradictory nature of the provision. For instance, the arbitration provision in the Maizes and Baeza Agreements states that

all claims, whether legal or equitable, have to be resolved by arbitration in accordance with AAA rules. But the provision goes on to list exclusions, including claims for injunctive or equitable relief. The Mitchell Agreement contains a similar provision, except that it only excludes claims for injunctive or equitable relief brought by Guaranteed Rate.[1] Additionally, in the Maizes and Baeza Agreements, the arbitration provision mandates arbitration for "any and all claims" arising between Guaranteed Rate and the employee, but the provision immediately following that one requires consent to the exclusive jurisdiction of Illinois state courts and federal courts in Cook County, Illinois for actions "relating to or arising out of this Agreement." These contradictions render the provision sufficiently opaque that, combined with the relative unsophistication of the plaintiffs, it is difficult to conclude that the agreement "clearly and unmistakably" delegates threshold issues to the arbitrator here.

**Procedural unconscionability.** As with Version 2, there is no real dispute as to the fact that Version 1 was an adhesion contract that the plaintiffs did not have a meaningful opportunity to negotiate or reject wholesale. Similarly, there is an element of surprise present because the arbitration agreement was buried on the second-to-last page of a document titled "Sales Compensation Plan" and because the contradictory nature of the terms regarding jurisdiction makes it difficult to discern when the agreement actually applies.[2]

Guaranteed Rate argues that the plaintiffs who signed Version 1 did so without any signing deadline and were free to consult counsel or ask questions. The fact that the agreement

[1] To be clear, the provision is not identical in all the agreements that Guaranteed Rate has grouped under Version 1. It is also worth noting the one-sidedness of the provision in the Mitchell Agreement, which seemingly allows Guaranteed Rate to pursue its equitable claims in court while forcing its employees to take their equitable claims to an arbitrator. This further adds to the substantive unconscionability of the agreement signed by Mitchell.

[2] As noted above, there are at least two contradictions in the Maizes and Baeza agreements: (1) the contradiction between requiring "any and all claims (legal and equitable)" to be resolved in arbitration and the later exclusion of equitable claims; and (2) the contradiction between the provision requiring arbitration of all claims and the provision requiring consent to the exclusive jurisdiction of Illinois courts for actions relating to or arising out of the agreement. The Mitchell Agreement only includes the first inconsistency, but there is an additional element of substantive unconscionability there because only equitable claims brought by Guaranteed Rate are excluded from the arbitration agreement.

itself doesn't contain a deadline doesn't necessarily mean that a party had unlimited time to sign. The declaration from Guaranteed Rate's Human Resources Director reflects that Guaranteed Rate would grant additional time for review upon request, which suggests that the plaintiffs were given some timeframe for signing the agreement, even if it is unclear what that timeframe was. Also, the theoretical opportunity to consult a lawyer doesn't cure the overall procedural unconscionability of the agreement.

Guaranteed Rate also argues that the plaintiffs' ability to negotiate or review terms is demonstrated by the fact that some plaintiffs made handwritten changes or executed multiple versions of the agreement. The handwritten change Guaranteed Rate refers to is an annotation on the Mitchell Agreement that says, "loans must meet GRI Corporate Objectives," alongside the provision that lays out the compensation provision. This added caveat on what counts towards employee compensation can hardly be considered proof of the plaintiff's ability to negotiate the terms. Similarly, the fact that an employee was made to sign multiple versions of the agreement, without any indication of terms changed for the employee's benefit, does not show a meaningful opportunity to negotiate.

**Substantive unconscionability.** Version 1 contains the same substantively unconscionable provisions that were present in Version 2: (1) a one-way attorneys' fees provision; and (2) a choice of law and venue provision.

With respect to the fees provision, Guaranteed Rate asserts it should not be considered because it is not a part of the arbitration provision itself and it only applies to claims "to enforce, defend, and/or prosecute" the Sales Compensation Plan and not cases brought under the labor laws. Guaranteed Rate's argument that the attorneys' fees provision is not "part of the arbitration provision itself" is at odds with Guaranteed Rate's arguments about severability. In that context, Guaranteed Rate wants the Court to consider a severability provision that is also "not a part of the arbitration provision."

As for the argument that the provision doesn't apply in this case, the Court rejected a similar argument with respect to Version 2. Read together with the arbitration provision, the fees

provision creates a significant chilling effect on employees seeking to enforce their rights. This doesn't change because Guaranteed Rate claims the provision doesn't apply here. It's also worth noting, even though it doesn't make a difference with respect to the outcome of this motion, that Guaranteed Rate has in fact sought to enforce a similar one-sided attorneys' fees provision against at least one opt-in plaintiff in this case.[3]

Guaranteed Rate also argues that any unfairness associated with the one-sided attorneys' fees provision is eliminated because such provisions are automatically rendered reciprocal under California law. But the fact that California courts limit one-way attorneys' fees provisions as a matter of law doesn't mean that such provisions aren't unconscionable when adopted. *See* Cal. Civ. Code § 1670.5(a). If anything, Guaranteed Rate's inclusion of an obviously illegal provision, knowing that courts wouldn't apply it as written, can only be characterized as an attempt to discourage employees from enforcing their rights.

With respect to the choice of law and venue provision, Guaranteed Rate contends it cannot serve as a basis for a finding of substantive unconscionability because California law did not make such provisions unlawful until 2017, after the plaintiffs signed Version 1. *See* Cal. Labor Code § 925. But a contract term doesn't have to violate a particular law to be unconscionable. As the California Supreme Court has made clear, the focus of the substantive unconscionability inquiry is whether a term is "unreasonably favorable to the more powerful party." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). Forcing employees who work and reside in California to assert their rights in a different state, without the protection of California laws, is clearly unreasonable, regardless of whether there was a statute on the books about it.

---

[3] The plaintiffs ask the Court to take judicial notice of Guaranteed Rate's Pre-Hearing Brief in *Guaranteed Rate, Inc. v. David Breaux*, JAMS Case No. 5220008190. *See* Dkt. No. 184. That brief, filed against David Breaux, one of the opt-in plaintiffs in this case, expressly seeks attorneys' fees, costs, and arbitration costs. Although Breaux signed Version 3 of the arbitration agreement, the attorneys' fees provisions in both versions are similarly one-sided, and Guaranteed Rate makes the same argument—that the attorneys' fees provision doesn't apply to wage and hour claims—with respect to both Version 1 and Version 3.

**Severability.** Guaranteed Rate points to a clause in the "Sales Compensation Plan" that says that any unenforceable provision may be severed without affecting the remaining provisions. But the presence of a severability clause is not a dispositive factor in the severability analysis. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1103 (9th Cir. 2024). The arbitration agreement here is sufficiently permeated with procedural and substantive unconscionability that, notwithstanding the severability clause, severance is not the proper remedy. This is especially true given Guaranteed Rate's continued failure to update the agreement, even after 2019, when it was urged to "revise its arbitration agreement in the interest of fairness." *Pereyra v. Guaranteed Rate, Inc.*, 2019 WL 2716519, at *11 n.1 (N.D. Cal., June 28, 2019).

**IT IS SO ORDERED.**

Dated: November 18, 2025

VINCE CHHABRIA
United States District Judge